Argued January 10, affirmed February 23, 1967

# WHITE BROS. CONSTRUCTION CO., INC. et al, *Appellants,*
and
# OREGON COLUMBIA CHAPTER THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC., *Intervenor-Appellant,*
*v.* OREGON STATE POLICE et al, *Respondents.*

424 P. 2d 221

*David A. Rhoten,* Salem, argued the cause for appellants. *Asa L. Lewelling,* Salem, argued the cause for intervenor-appellant. With them on the briefs were Rhoten, Rhoten & Speerstra and George Rossman, Salem.

*Leon L. Hagen,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Robert Y. Thornton, Attorney General, and Richard W. Sabin, Assistant Attorney General and Chief Counsel for the Public Utility Commissioner, Salem.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

O'CONNELL, J.

This is a suit to enjoin defendants from enforcing against plaintiffs certain statutory provisions relating to the operation of motor vehicles on the public highways. Plaintiffs appeal from a decree denying them the requested relief.

Plaintiffs are contractors engaged by the Oregon State Highway Commission to rebuild portions of approximately 35 miles of the North Santiam high-

way. As a result of erosion by flood waters seventeen separate parts of the highway were damaged. During the time plaintiffs were repairing and rebuilding these damaged parts of the highway it was open to public travel subject to interruption from time to time as it became necessary to permit plaintiffs to proceed with their work.

Shortly after the job got under way the Oregon State Police commenced to issue citations to plaintiffs' employees who were working within the 35-mile area for violation of ORS 481.105 (lack of license plates), ORS 483.458–483.460 (lack of mud flaps), and ORS 767.105 (lack of public utility commission permits).

Plaintiffs contend that the foregoing provisions are not applicable because the vehicles used in highway construction jobs are, by the very nature of their use and purpose, exempt from the requirements set forth in the statutes in question.

■ More specifically, it is contended that these statutory provisions apply only when a vehicle is used on a "public highway" and that when a road is under reconstruction it is not a public highway within the meaning of the statutes.

This contention is without merit. The roadway upon which plaintiffs were working was open to the travelling public and was being used by the public subject to temporary interruption whenever plaintiffs' equipment was maneuvering in the roadway in the course of carrying on their work.

The statutory requirement that certain vehicles use mud flaps was intended for the safety of those travelling on the highway. When a road under repair is being used by the public, the need for protection provided by mud flaps is increased and there is at least

as much reason to impose the requirement on plaintiffs' vehicles which are moving along the course of travel. For like reasons, other provisions of the statutes designed for the safety of those using the highway also apply to plaintiffs.

The registration and licensing requirements are also applicable. The maintenance trucks and dump trucks used by plaintiffs travelled over the 35-mile area of the highway along with other members of the public. The language of the statutes is broad enough to include vehicles of this type within the registration and licensing requirement.[1] Since we regard a roadway under construction used by the public as a public highway, it is difficult to see why plaintiffs' vehicles should not be regarded as falling within the purpose of the statute. At least as to registration and licensing, the fact that plaintiffs are engaged in highway repair is no reason for treating their use of the highway any differently than the use by contractors who find it necessary to travel upon the highways for other purposes not related to highway repair.

Plaintiffs finally contend that the public utility laws relating to motor carriers have no application to vehicles employed by a road contractor in constructing or reconstructing a highway. Defendants assert

---

[1] ORS 481.105 (1) provides:

"Every owner of a motor vehicle, tractor or semi-trailer, before he operates it upon the highways, shall * * * cause to be filed * * * an application for registration."

In a previous section, ORS 481.040 (1) "motor vehicle" was defined as "* * * *every* self-propelled vehicle and vehicle designed for self-propulsion except road rollers, farm tractors, traction engines and police ambulances * * *." (Emphasis added.)

See ORS 481.075 (2) exempting only specified motor vehicles engaged exclusively in road construction, repair, and maintenance from registration and licensing requirements.

that plaintiffs are contract carriers as defined by ORS 767.105 (2), which reads as follows:

"(2) Every person who engages for compensation to perform a combination of services which includes transportation of property of others upon the public highways is subject to the jurisdiction of the commissioner as to such transportation and shall not engage upon the same without first having obtained a common carrier or contract carrier permit to do so."

■ The statute is broad enough to include plaintiffs' operation within its meaning. As a part of its contract with the highway commission plaintiffs were required to transport earth materials which they did not own. Thus they were engaged "for compensation" to perform services which included the "transportation of property of others" within the meaning of ORS 767.105 (2).

■ The vehicles used to transport the earth materials, although overdimension vehicles, were within the definition of motor vehicle in ORS 767.010 (5)[2] and therefore subject to regulation by the public utility commissioner.

We hold, therefore, that plaintiffs were subject to all of the statutes relied upon by defendants in issuing citations to plaintiffs' employees.

The decree of the trial court is affirmed.

---

[2] ORS 767.010 (5) defines "motor vehicle" as follows:

" 'Motor vehicle' means any self-propelled or motor-driven vehicle, or any train or combination of vehicles, used or physically capable of being used upon any public highway in this state in the transportation of persons or property, except vehicles operating wholly on fixed rails or tracks and electric trolley busses. 'Motor vehicle' includes overdimension vehicles or vehicles permitted excessive weights pursuant to special authorization issued by a city, county or the State Highway Commission."