MARGARIDA FERREIRA, EXECUTRIX (ESTATE OF HELDER FERREIRA) *v.* LOUIS PISATURO

SUPERIOR COURT        JUDICIAL DISTRICT OF        FILE NO. 0270005
                      NEW HAVEN

Memorandum filed July 10, 1989

*Falcone & Lyons,* for the plaintiff.

*Tyler, Cooper & Alcorn,* for the defendant.

CORRADINO, J. On December 18, 1987, the plaintiff's decedent, Helder Ferreira, a New Haven resident, was working as a laborer for the ADL Contracting Corporation (ADL) at a sewer construction site on Route 1 in Orange. The defendant, Louis Pisaturo, was also working for ADL at the same location.

Route 1 is a four lane highway. On the date referred to, two of the four lanes at the construction site were closed to allow the digging and refilling of a trench across Route 1. Ferreira was working in the trench. The defendant was operating a Clark Michigan 55 B, described by the defendant as a bucket loader and by the plaintiff as a payloader. The defendant was using this equipment to prepare the refilled portion of the trench for repaving. The weight of the machine was used to compact the fill by rolling over it with the rubber tires of the machine. The bucket of the machine was not being used at the time. The machine had a license plate, four wheels, lights, reflectors, blinkers, directional signals, brake lights, a gear shift, a hand brake, a parking brake, a reverse gear, a steering wheel, windshield wipers, a heater, a horn and rear-view mirrors.

The accident in question here occurred when the machine operated by the defendant rolled into the portion of the trench where Ferreira was working, striking him and causing him to sustain serious personal injuries, which led to his death later that same day. In accordance with the Connecticut Workers' Compensation Act, ADL has been paying death benefits to the widow and executrix of the decedent.

In the present case, the plaintiff, Ferreira's executrix, seeks damages from the defendant for Ferreira's death,

which resulted from the injuries he sustained. The plaintiff alleges in her complaint that the defendant negligently operated his machine, which the plaintiff characterizes as a motor vehicle, causing Ferreira's death. She further alleges that the defendant is, therefore, liable to the estate.

The defendant has filed a motion for summary judgment pursuant to Practice Book § 378 et seq. The defendant claims that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. The defendant claims that the action is barred by the so-called "fellow employee bar" rule of General Statutes § 31-293a. That is, if an employee is injured on a worksite as a result of a fellow employee's negligence, and if the injured worker or his dependent is entitled to workers' compensation benefits, then workers' compensation provides the exclusive remedy and no action may be brought against the fellow employee.

On the other hand, the plaintiff claims that the motion should be denied pursuant to a statutory exception in § 31-293a that allows a suit against a fellow employee for negligence in the operation of a "motor vehicle." The plaintiff claims that the vehicle that struck and killed the defendant is a "motor vehicle" for purposes of the exception to the Workers' Compensation Act, § 31-293a.

I

STATUTORY CONTEXT

Prior to October 1, 1983, when it was amended, § 31-293a provided in relevant part: "If an employee or, in case of his death, his dependent has a right to benefits or compensation under this chapter on account of injury or death from injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee or depen-

dent and no action may be brought against such fellow employee *except for negligence in the operation of a motor vehicle as defined in section 14-1 . . . ."* (Emphàsis added.)

Also prior to 1983, "motor vehicle" was defined in relevant part in General Statutes § 14-1 (26) as: "Any vehicle which is propelled or drawn by any power other than muscular, except . . . ." The statute then listed a variety of vehicles, such as aircraft and golf carts, that are not "motor vehicles" and concluded with a phrase excluding from the definition of "motor vehicle" "any other vehicle not suitable for operation on a highway." General Statutes § 14-1 (26).

The purpose of the motor vehicle exception to § 31-293a was set forth in 1983 in *Dias* v. *Adams,* 189 Conn. 354, 359–60, 456 A.2d 309 (1983): "Although the legislative history of § 31-293a is not especially revealing, there is some evidence that the intention was to distinguish 'simple negligence on the job' from negligence in the operation of a motor vehicle. Unlike the special hazards of the work place, the risk of a motor vehicle accident is a common danger to which the general public is exposed. Particular occupations may subject some employees to a greater degree of exposure to that risk. The nature of the risk remains unchanged, however, and in many employments it is no greater than for the general public. The legislature has chosen, therefore, not to extend the immunity given to fellow employees by § 31-293a to accidents having a less distinct relationship to the hazards of the employment. At the same time it has accorded the injured employee, in addition to workers' compensation, the same remedy he would have against a member of the general public who caused a motor vehicle accident."

Prior to 1983, a number of cases permitted claims under this so-called motor vehicle exception for the

negligent operation of such vehicles as forklifts; *Evans* v. *Lopes,* 36 Conn. Sup. 101, 412 A.2d 718 (1979); cranes; *Michaud* v. *Theriault,* Superior Court, judicial district of Tolland, Docket No. 19177 (September 29, 1980), 6 Conn. L. Trib. 51, p. 16; backhoes; *Dias* v. *Adams,* Superior Court, judicial district of Farifield at Bridgeport, Docket No. 161265 (February 10, 1977), 3 Conn. L. Trib. 14, p. 12, rev'd on other grounds, 189 Conn. 354, 456 A.2d 309 (1983); and bucket loaders; *Truiolo* v. *Wilby,* United States District Court, District of Connecticut, Docket No. H74251 (August 16, 1977), 3 Conn. L. Trib. 38, p. 13. *Truiolo,* in turn, refers to an unreported decision of Justice Shea, *Dupuis* v. *Brown,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 178997 (March 5, 1974).

The cases drew some very fine distinctions. In *Davey* v. *Pepperidge Farms, Inc.,* 180 Conn. 469, 472, 429 A.2d 943 (1980), the court held that a hoist attached to a flatbed truck was not a motor vehicle; the hoist was "not suitable for operation on a highway," it was controlled not by the truck motor but by remote control devices. *Michaud* v. *Theriault,* supra, decided after *Davey,* involved the operation of a crane that had been immobilized at a construction site for a week when the accident occurred. In *Michaud* the court noted that the hoist in *Davey* had been attached to the truck "as a matter of convenience," but that the crane as a unit was capable of being operated on the highway even if at the time of the accident it was not being so operated. Id., 17. On the other hand, the crane in *Ranfone* v. *Miranda,* Superior Court, judicial district of New Haven, Docket No. 174624 (June 30, 1980), 6 Conn. L. Trib. 38, p. 16, was held not to be a "motor vehicle" under § 31-293a because, as the court in *Michaud* noted, that particular crane was not registered with the motor

vehicle department and, a flatbed truck had to be used to transport it from one job site to another.

The Supreme Court decision in *Dias* v. *Adams,* supra, 189 Conn. 358–60, only added further complexities to the scholastic dispute concerning the interpretation of the motor vehicle exception to § 31-293a. For a general discussion of the law prior to the 1983 amendments, see J. Asselin, Connecticut Workers' Compensation Practice Manual (1985) pp. 75–76.

Against this confusing background the legislature sought to clarify the intended application of the motor vehicle exception of § 31-293a by adding the following language to that section: "For purposes of this section, contractor's mobile equipment such as bulldozers, power-shovels, rollers, graders or scrapers, farm machinery, cranes, diggers, forklifts, pumps, generators, air compressors, drills or other similar equipment designed for use principally off public roads are not 'motor vehicles' if the claimed injury involving such equipment occurred at the worksite . . . ." Public Acts 1983, No. 83-297. Asselin states that the legislature passed this amendment "[t]o avoid what the legislature decided were unintended interpretations under the fellow employee motor vehicle exception . . . ." J. Asselin, supra, p. 76.

The legislative history is not extensive. The plaintiff refers to a portion of the remarks by Maura Melley made at a public hearing concerning the amendment to § 31-293a. As the defendant notes, Melley was not a legislator, so her remarks cannot be considered by the court in interpreting the statutory language. *Savings & Loan League of Connecticut, Inc.* v. *CHFA,* 184 Conn. 311, 315 n.1, 439 A.2d 978 (1981).

In any event, the views of Melley, vice president of the Connecticut Insurance Industry Association, were in large measure reflected in the remarks of Senator

Joseph H. Harper, Jr., regarding the amendment to
§ 31-293a. Harper urged passage of the amendment
because of the confusion that existed over the defini-
tion of "motor vehicle." The amendment would clar-
ify the definition of the term "motor vehicle" by
excluding contractors' equipment that was designed
primarily for use off public roads where the injury
occurs at the worksite. 26 S. Proc., Pt. 6, 1983 Sess.,
pp. 2060–61, remarks of Senator Joseph H. Harper, Jr.
Further commenting on the amendment, Asselin notes
that vehicles excluded by the 1983 amendment "may
yet qualify for the exception if being operated on a high-
way. Injuries caused while operating motor vehicles
other than those specified still qualify for the excep-
tion even if the injury occurs on a job site rather than
on the road." J. Asselin, supra, p. 77.

Perhaps to put the matter more simply, § 31-293a
permits suits by an employee against a fellow employee
if the injuries to the employee were caused by the negli-
gent operation of a motor vehicle. In 1983, the statute
was amended to provide, with respect to injuries occur-
ring on and after October 1, 1983, that vehicles called
"contractors' mobile equipment" were not motor vehi-
cles "if the claimed injury involving such equipment
occurred at the worksite."

What might be taken to add to the complexity of the
problem before the court, however, is that in 1983, as
part of an apparently separate legislative venture, the
basic definition of "motor vehicle" was changed by
means of Public Acts 1983, No. 83-431[1] which, in its

---

[1] "House Bill No. 7046
"PUBLIC ACT NO. 83-431
"AN ACT CONCERNING THE REGISTRATION OF SPECIAL
MOBILE EQUIPMENT.
"Section 1. (NEW) The commissioner may register any vehicle operated
upon any public highway as special mobile equipment as defined in subsec-
tion (i) of section 14-165 of the general statutes and may issue a special
number plate, to be displayed in a conspicuous place at the rear of such
vehicle. The commissioner may issue a registration containing any limita-

first section, created the present General Statutes § 14-25b, and, in the second section, redefined "motor vehicle" to exclude "special mobile equipment." See General Statutes §§ 14-1 (30) and 14-165 (i).

An examination of this public act in its entirety shows that increasing the regulatory powers of the motor vehicles commissioner was the motivation for its pas-

tion on the operation of any such vehicle as he deems necessary for its safe operation, provided such vehicle's movement on a highway shall be restricted from its place of storage to the construction site, or from one construction site to another. No such vehicle shall be operated upon or across any highway during the times when lights are required as specified in section 14-96a of the general statutes unless it displays the lighted lamps required by sections 14-96b and 14-96c of the general statutes. Such vehicle shall not be used for the transportation of passengers or a payload when operating upon a highway, except that while operating on a highway construction project or on a construction project of any kind which requires the crossing of a highway, it may carry passengers or a payload to the extent required by the project. A vehicle registered as special mobile equipment shall be exempt from the equipment requirements specified in sections 14-80 to 14-106, inclusive, of the general statutes. The commissioner may require that a vehicle for which an application for special mobile equipment registration is submitted pass an inspection prior to the issuance of such registration and at such times as he deems necessary for the safe operation of such equipment. The commissioner shall charge an annual fee for such registration equal to one-half of the commercial registration fee for a vehicle having the same gross weight.

"Sec. 2. Subdivision (26) of section 14-1 of the general statutes is repealed and the following is substituted in lieu thereof:

"(26) 'Motor vehicle' means any vehicle which is propelled or drawn by any power other than muscular, except aircraft, motor boats, road rollers, baggage trucks used about railroad stations or other mass transit facilities, electric battery-operated wheel chairs when operated by physically handicapped persons at speeds not exceeding fifteen miles per hour, golf carts operated on highways solely for the purpose of crossing from one part of the golf course to another, agricultural tractors, farm implements, such vehicles as run only upon rails or tracks, self-propelled snow plows, snow blowers and lawn mowers, when used for the purposes for which they were designed and operated at speeds not exceeding four miles per hour, whether or not the operator rides on or walks behind such equipment, bicycles with helper motors as defined in section 14-286, SPECIAL MOBILE EQUIPMENT AS DEFINED IN SUBSECTION (i) OF SECTION 14-165 and any other vehicle not suitable for operation on a highway.''

sage. Any change in the definition of "motor vehicle" under § 14-1 (30), however, has a direct bearing on the ambit of the motor vehicle exception of § 31-293a. "Special mobile equipment" is defined in General Statutes § 14-165 (i) as "a vehicle not designed for the transportation of persons or property upon a highway and only incidentally operated or moved over a highway, including but not limited to ditch-digging apparatus, well-boring apparatus and road construction and maintenance machinery such as asphalt spreaders, bituminous mixers, bucket loaders, tractors other than truck tractors, ditchers, leveling graders, finishing machines, motor graders, road rollers, scarifiers, earth moving carry-alls and scrapers, power shovels and drag lines, and self-propelled cranes and earth moving equipment. The term does not include house trailers, dump trucks, truck-mounted transit mixers, cranes or shovels, or other vehicles designed for the transportation of persons or property to which machinery has been attached."

Is there a difference between "special mobile equipment" and "contractors' mobile equipment?" The definition of "special mobile equipment" in § 14-165 (i) is arguably broader and more general than that for "contractors' mobile equipment." Some of the equipment mentioned in § 14-165 (i) is specifically referred to in § 31-293a, but the fact that every type of equipment referred to in § 14-165 (i) is not mentioned in § 31-293a arguably does not appear significant. That is because "equipment designed for use principally off public roads," would be included in the § 14-165 (i) general definition of "special mobile equipment" as "a vehicle not designed for the transportation of persons or property upon a highway." For the court, the principal difference between the two statutory definitions is the language in § 14-165 (i) further qualifying the defini-

tion of "vehicle"—it must be "only incidentally operated or moved over a highway."

Asselin's previously noted comment then becomes relevant. "Contractors' mobile equipment" is only *not* a motor vehicle as long as it is being used at a "worksite." Such equipment may still be "special mobile equipment," but suit would lie perhaps under the motor vehicle exception to § 31-293a if, at the time of the injury, the equipment was not at a worksite and it could be said under the facts of a particular case, that the equipment was not being "only incidentally operated or moved over a highway"—that is, no matter what it was designed for by the manufacturer.

## II

### EXISTENCE OF A GENUINE ISSUE OF MATERIAL FACT

Counsel for both sides have referred to the standard cases that set forth the guidelines on whether a material issue of fact exists so as to preclude the granting of a motion for summary judgment by the trial court. The party moving for summary judgment has the burden of showing that there is no doubt as to any genuine issue of material fact, and the facts must be viewed in the light most favorable to the nonmovant. *Rawling* v. *New Haven,* 206 Conn. 100, 104, 537 A.2d 439 (1988); *Spencer* v. *Good Earth Restaurant Corporation,* 164 Conn. 194, 197–98, 319 A.2d 403 (1972). If an issue of fact does exist, the trial court cannot try that issue. *Michaud* v. *Gurney,* 168 Conn. 431, 433, 362 A.2d 857 (1975). The nonmovant has a constitutional right to have a jury decide any issue of fact. *Ardoline* v. *Keegan,* 140 Conn. 552, 555, 102 A.2d 352 (1934).

The court has read and reread the excellent briefs filed in this case, yet it cannot find any issue of fact that is disputed by the parties. Certain facts are stressed by one side, certain by the other. The plain-

tiff points to various features of the equipment in question that, she argues, make this vehicle "suitable for operation on a highway," she emphasizes the physical location where the fatal accident occurred and she talks about how the equipment was being used at the time of the accident. These facts and the others referred to in the briefs of both parties, however, are not in dispute.

Each side refers to undisputed facts as a basis for the court, as a matter of law, to rule that the equipment involved here was or was not a "motor vehicle" under General Statutes §§ 14-1 (30) and 31-293a. This is the very scenario for which the motion for summary judgment was created. In fact, the plaintiff's brief and her argument belie any claim that there are disputed issues of fact between the parties. The brief first refers to "undisputed facts" that show that the equipment was being "operated" at the time of the accident. It then argues the vehicle was "suitable" for operation on the highway by referring to various supporting facts and affidavits—vehicle registration, various features of the vehicle such as brakes, photos and affidavits regarding the vehicle. The defendant has not put any of these facts into issue, facts that the plaintiff claims are material to the question of law before the court.

By other photographs and affidavits, the plaintiff argues that the facts establish that the equipment here was being operated on a highway as a matter of course; in fact, the highway was the area being worked on at the time of the accident. The defendant does not dispute any of these facts, which, the plaintiff also argues, support her position regarding how the court should define the vehicle in question as a matter of law under the statutes. Rather, the defendant draws different definitional conclusions from the facts that are not in dispute and, in effect, argues that many of the facts cited by the plaintiff are irrelevant to the definitional task that both sides ask the court to perform.

The plaintiff also argues that the "key to the resolution" of this case involves an examination of how the vehicle was being used at the time of the accident. The plaintiff again refers to various undisputed facts in arguing that, at the time of the accident, the vehicle was on a highway and was not being used for the purposes for which it was designed. The plaintiff wants the court to draw certain legal conclusions from these facts relative to the applicability of the motor vehicle exception to § 31-193a. Again, the defendant does not contest any of the facts cited by the plaintiff but argues that the particular use of the vehicle at the time of the accident and the highway location of the worksite are not relevant to the issue before the court—whether the Clark Michigan 55 B is a "motor vehicle" under § 31-293a.

The dispute between the parties does not arise out of contested versions of the facts, but out of the legal significance of undisputed facts as they bear on relevant statutory definitions.

There have been several summary judgment cases where the trial courts have ruled, as a matter of law, on whether a certain piece of equipment involved in an accident was a "motor vehicle" for purposes of § 31-293a. *Davey* v. *Pepperidge Farms, Inc.,* supra, 470–71; *Evans* v. *Lopes,* supra; *Michaud* v. *Theriault,* supra; *Ranfone* v. *Miranda,* supra; cf. *Truiolo* v. *Wilby,* supra, a decision by Judge Blumenfeld under federal summary judgment procedure. In those cases, as here, there were no material facts in issue that the courts felt precluded them from granting the summary judgment motions. It would be especially unfortunate for the court, given the facts of this case, to hold that it cannot resolve this motion, in light of the stated purpose of the 1983 amendment of § 31-293a to clarify some of the confusion regarding the definition of "motor vehicle" under that statute.

### III

WAS THE VEHICLE INVOLVED HERE A "MOTOR VEHI-
CLE" UNDER GENERAL STATUTES § 31-293a?

With respect to the merits, the question before the court is whether the vehicle being operated at the time of the accident was a "motor vehicle" as defined in § 31-293a. An action will lie against a fellow employee for the negligent operation of a "motor vehicle" as that term is defined in General Statutes § 14-1. Section 14-1 (30) provides: " 'Motor vehicle' means any vehicle propelled or drawn by any nonmuscular power, except . . . special mobile equipment as defined in subsection (i) of section 14-165 and any other vehicle not suitable for operation on a highway." Section 14-165 (i) provides: " 'Special mobile equipment' means a vehicle not designed for the transportation of persons or property upon a highway and only incidentally operated or moved over a highway, including but not limited to . . . ." There follows a list of different vehicles, "bucket loaders" being one of them.

Section 31-293a provides: "For purposes of this section, contractors' mobile equipment such as bulldozers, powershovels, rollers, graders or scrapers, farm machinery, cranes, diggers, forklifts, pumps, generators, air compressors, drills or other similar equipment designed for use principally off public roads are not 'motor vehicles' if the claimed injury involving such equipment occurred at the worksite on or after October 1, 1983." Simply put, if the Clark Michigan 55 B is not a "motor vehicle," this action will not lie.

### A

The defendant argues that the Clark Michigan 55 B is a type of bucket loader and, therefore, by the language of § 14-1 (30), as it refers to § 14-165 (i), it is

explicitly excluded from the definition of "motor vehicle." The defendant has submitted the affidavit of Robert Funk, who states that he has been employed by a construction equipment dealer for twenty-five years and is familiar with such equipment and the terminology used in the industry. Funk states the term "bucket loader" describes a category of construction equipment and within this category are two subcategories; one type moves on tracks and another type moves on rubber tires and is called a "rubber tire loader." Funk states that the Clark Michigan 55 B is a rubber tire loader and thus is a "bucket loader." According to Funk, the term "payloader" is a trade name used by one manufacturer for its brand of rubber tire loader.

The plaintiff nowhere disputes these definitional assertions by the defendant. In fact at several points in her brief, she refers to the Clark Michigan 55 B as a "payloader" and merely makes the claim that a payloader has been held to be a "motor vehicle," citing *Dupuis* v. *Brown,* supra. No doubt, prior to the 1983 amendments to §§ 14-1 and 31-293a, this was sound law. In this regard, however, *Dupuis* is quite damaging to the plaintiff's position in light of the 1983 exclusion of "special mobile equipment" and specifically "bucket loaders" from the definition of motor vehicles. Commenting on *Dupuis,* Judge Blumenfeld said in *Triuolo* v. *Wilby,* supra, 13: "In addition, defendant acknowledges that the terms bucket loader and payloader are used interchangeably to describe the same machinery. I see no reason, therefore, not to follow the holding of Judge Shea in *Dupuis* v. *Brown,* [supra,] that bucket loaders and payloaders are motor vehicles within the meaning of § 31-293a and § 14-1 (26)."

What the plaintiff does argue in her brief is that this "payloader was not being used at the time of the accident for any of the other purposes for which it was

designed. In fact the bucket was not used at all." At the time of the accident the equipment was used for its "wheels," "tires" and "weight."

In essence, the plaintiff does not suggest that the Clark Michigan 55 B is not a "bucket loader" or at least that it was not designed by its manufacturer to be such. The plaintiff rather argues that the Clark Michigan 55 B is not a "bucket loader" for § 14-165 (i) purposes because at the time of the accident the vehicle was not being used as a "bucket loader"—therefore it is not a bucket loader for statutory definitional purposes. In defining "motor vehicle" in § 14-1 (30), however, the legislature knew very well how to provide that certain vehicles otherwise excepted from the "motor vehicle" definition could be regarded as "motor vehicles" if they were not used for the purpose for which they were designed. Thus, electric battery-operated wheel chairs are not "motor vehicles," but only "when operated by physically handicapped persons" below a certain speed, nor are golf carts operated on highways solely for the purpose of crossing from one part of the golf course to another, nor are "lawn mowers, when used for the purposes for which they were designed" and operated below a certain speed.

In defining "special mobile equipment" in § 14-165 (i), the legislature simply said that such equipment means vehicles "not designed for the transportation of persons or property upon a highway and only incidentally operated or moved over a highway, including but not limited to . . . bucket loaders . . . ." Thus, the statutory scheme is quite clear and explicit. Apparatus classified as "special mobile equipment" are not "motor vehicles," and "bucket loaders" are a type of "special mobile equipment." With respect to "bucket loaders," the legislature did not use any of the qualifying language noted above in relation to certain vehicles that could be "motor vehicles" if not used for the

purposes for which they were designed. Thus, the plaintiff's references to cases from other jurisdictions as authority for the proposition that "the classification of a particular vehicle may vary depending on how it is used," misses the mark.

Several of the cases relied on by the plaintiff involve situations where courts were defining the term "motor vehicle" in a variety of contexts for several different purposes. In *Lemon* v. *Federal Ins. Co.*, 107 Wis. 2d 351, 320 N.W.2d 33, aff'd, 111 Wis. 2d 563, 331 N.W.2d 379 (1983), a tractor was held to be a "motor vehicle" under Wisconsin law; therefore, under the applicable state statute there was no limit on the amount of recovery that could be obtained against a county whose employee operated the tractor at the time of the accident. *People* v. *Jordan*, 75 Cal. App. 3d Sup. 1, 6, 142 Cal. Rptr. 401 (1977), held that a moped was a motor vehicle for purposes of enforcing the drunk driving statute. The case of *White Bros. Construction Co.* v. *Oregon State Police*, 246 Or. 106, 110, 424 P.2d 221 (1967), held that heavy earth moving trucks were motor vehicles and, therefore, the police were authorized to enforce certain regulations regarding equipment on the trucks. *Zuber* v. *Clarkson Construction Co.*, 315 S.W.2d 727, 733 (Mo. 1958), held that under Missouri law, certain large diesel powered tractor trailer combinations used as earth movers were motor vehicles. Thus, the decedents who were killed when tampering with the machines were guilty under a statute that made such activity a crime if the vehicle tampered with was a motor vehicle. That being the case, the vehicle owner did not owe the decedents a duty of protection from those dangerous vehicles.

All of those cases involved statutes written in very broad terms, basically defining motor vehicles as any self-propelled vehicle used or capable of being used on a highway. That is not Connecticut's statutory scheme.

Before 1983, this court would have agreed with the previously cited cases of *Dupuis* v. *Brown,* supra, and *Truiolo* v. *Wilby,* supra, and held that this payloader or bucket loader was a motor vehicle. In 1983, however, the statute defining "motor vehicle" was changed in the manner previously described; "special mobile equipment" was excluded from the definition of "motor vehicles" by legislative fiat, and bucket loaders were specifically mentioned as a type of special mobile equipment.

In oral argument, the plaintiff's counsel maintained that there are so many different types of construction equipment that the Clark Michigan 55 B cannot be made to fit any particular definition. Funk submitted his affidavit, however, and even the plaintiff's brief characterized this vehicle as a "payloader" with all the inevitable consequences of that characterization that Judge Blumenfeld's opinion in *Truiolo* suggests. Simple denials or contrary assertions do not raise issues of fact.

If the general definition of "special mobile equipment" in § 14-165 (i) is examined and the claim that this vehicle is a "bucket loader" is not accepted, however, there is still good reason to hold that the Clark Michigan 55 B meets that general definition. That term is generally defined as "a vehicle not designed for the transportation of persons or property upon a highway and only incidentally operated or moved over a highway." The uncontradicted facts are that the Clark Michigan 55 B is equipped with an enclosed cab containing only a single operator's seat and that there is no cargo area. In his deposition, the defendant said the bucket at the front of the vehicle is used to carry material and equipment, but that cannot mean the vehicle is "designed for the transportation of property." The very purpose of a bucket is to move and carry material. Given that "bucket loaders" and "earth moving

carryalls" are specifically defined as "special mobile equipment," the fact that these vehicles have the capacity and, indeed, the function of moving material and other equipment at a job site cannot remove them from the category of "special mobile equipment." The pictures submitted by the plaintiff, purporting to show vehicles like the one involved in this accident, establish to the court's satisfaction that the bucket attached to the front of the vehicle was not designed for the transportation of property. The court will analyze this problem further when it discusses the relationship between §§ 14-25b and 14-165 (i).

In fact, the plaintiff does not concentrate her argument on claiming that this vehicle was *"designed* for the transportation of . . . property upon a highway." (Emphasis added.) Rather, the plaintiff maintains that the "payloader involved in the present accident was not only designed for the transportation of persons on the roads but was also used extensively on the highway by the defendant."

It is not quite clear to the court what the plaintiff means by asserting that the Clark Michigan 55 B was "designed" for the transportation of *persons*. There is room for only one person in the cab and there is nothing in § 14-165 (i) to indicate that the fact that a vehicle relies on a human operator to function, as opposed to a remote control device, means that the vehicle cannot be "special mobile equipment." Obviously, if a vehicle can carry only the operator, it was not "designed for the transportation of persons."

The main thrust of the plaintiff's argument is that the Clark Michigan 55 B is not a piece of "special mobile equipment" because it cannot meet the second part of the definition of such equipment: it cannot be said that this vehicle was "only incidentally operated or moved over a highway." The plaintiff merges this argument

into the further assertion that this vehicle is a motor vehicle under the general definition of that term in § 14-1 (30) because this vehicle was "suitable for operation on a highway."

The plaintiff points out that the "payloader" had numerous characteristics of a motor vehicle; it was registered in New York, it had four tires, "headlights, brake lights, reflectors, blinkers, directional signals, gear shift, foot brakes, hand brakes, parking brakes, reverse gear, steering wheel, windshield wipers, heater, and rearview mirrors. Obviously the payloader was equipped with all of these motor vehicle necessities so that it could be operated on the highway." "Indeed," the plaintiff goes on to argue, "the payloaders used at the Orange Sewer Project were driven on Route 1." The plaintiff introduced affidavits and photographs to show payloaders being operated on Route 1, equipment and material of the defendant's employer located on Route 1, and to show that "these vehicles [payloaders] were driven on the Post Road for the purpose of transporting materials. In fact the entire phase of the project which was being worked on at the time of the accident was located on the highway . . . . Since this entire phase of the, project was located on Route 1, the use of the payloaders thereon was of a regular not incidental nature as contemplated in § 14-165 (i)."

In fact, however, the plaintiff's arguments seem to be rebutted by § 14-25b, which was passed by the legislature in 1983 as part of the same public act that modified the definition of "motor vehicle."[2] That public act in its first section (now § 14-25b), contemplated that special mobile equipment would at least be "incidentally operated or moved over a highway." Under § 14-25b the commissioner of motor vehicles "may *reg-*

---

[2] See footnote 1, supra.

*ister* any vehicle *operated upon any public highway* as *special mobile equipment* as defined in subsection (i) of section 14-165 and may issue a *special number plate . . . .*" (Emphasis added.) The section goes on to provide that the commissioner may issue any limitation on the operation of any such vehicle deemed necessary for its safe operation "provided such vehicle's *movement on a highway* shall be restricted from its *place of storage to the construction site* or from *one construction site to another. . . .*" (Emphasis added.) General Statutes § 14-25b.

Section 14-25b makes clear that the fact that a piece of "special mobile equipment" carries material or even passengers on a highway is permissible. "Such vehicle [referring to special mobile equipment] shall not be used for the transportation of passengers or a payload when operating upon a highway, *except that while operating on a highway construction project or on a construction project of any kind which requires the crossing of a highway, it may carry passengers or a payload to the extent required by the project.*" (Emphasis added.) General Statutes § 14-25b.

The statutory scheme thus assumes that "special mobile equipment" will, under some circumstances, operate on the highway. Thus, the fact that "special mobile equipment" may have some features and equipment, such as safety features, similar to those of "motor vehicles" that also travel on highways does not permit the rather circular argument that any vehicle with those features (directional signals, brake lights, etc.) cannot be "special mobile equipment."

Similarly the statutory scheme permits "special mobile equipment" to carry passengers or material on a highway when the construction site is a highway or the project requires the crossing of a highway. By its very language § 14-25b assumes that "special mobile equipment" will be used on "highway construction" sites or on sites in close proximity to highways.

Thus, the fact that the accident here occurred at a location that was a highway (at least when opened to traffic) or that the defendant's employer used its payloaders on Route 1, as claimed by the defendant, is entirely irrelevant in determining whether the Clark Michigan 55 B is a type of "special mobile equipment" and thus not a "motor vehicle" under § 14-1 (30). The use to which apparently some of these payloaders were put in this regard was not different from what the legislature contemplated when it passed Public Acts 1983, No. 83-431.

It is against this background that the plaintiff's additional or alternative argument should be examined. That is the assertion that the Clark Michigan 55 B is a "motor vehicle" under § 14-1 (30) because, as the last phrase of that statutory subsection notes, it is "suitable for operation on a highway." What this argument does not take into account is the fact that the above quoted statutory language predated the 1983 amendment to § 14-1 (30), which excluded "special mobile equipment" from the definition of "motor vehicle." That is, the present statutory scheme makes clear that "special mobile equipment" can operate on a highway for limited purposes, in an "incidental" way, and still not be "suitable for operation on a highway" in terms of § 14-1 (30). Or, to put it another way, the fact that the defendant's employer's payloaders operated on the highway as indicated in the plaintiff's brief, affidavits and exhibits, and even the fact that the accident occurred on a "highway," if that is assumed to be the case, does not make such vehicles "suitable for operation on a highway" even though, incidental to the main purpose for which they were designed, they do in fact operate on the highway for limited purposes. Any other position would make the statutory scheme incomprehensible—§ 14-1 (30) excludes "special mobile

equipment" from the "motor vehicle" definition, § 14-165 (i) recognizes that such equipment may be incidentally operated on the highway, § 14-25b fleshes out the nature of this contemplated operation, and § 14-1 (30) refers to "special mobile equipment" along with other vehicles similarly listed and also not "motor vehicles," as any other vehicle "not suitable for operation on a highway." All of this makes sense if in fact "special mobile equipment" that may operate on the highway incidentally to its primary function is still not "suitable" for operation on the highway on a regular basis or as a matter of course. Cf. *Koehring Co.* v. *Adams,* 452 F. Sup. 635, 638 (E.D. Wis. 1978).

Thus, under the statutory scheme, the mere fact that a vehicle operates on the highway at various times and is therefore capable of so doing does not mean that such a vehicle cannot be defined as "special mobile equipment."

### B

Apart from the question of whether the Clark Michigan 55 B is not a "motor vehicle" pursuant to the general definition of that term in § 14-1 (30), § 31-293a would still not permit this action if the October, 1983 amendment to that statute requires the court to hold that this equipment was not a "motor vehicle" as specially defined therein. The amendment provides: "For the purposes of this section (§ 31-293a), contractors' mobile equipment such as bulldozers, powershovels, rollers, graders or scrapers, farm machinery, cranes, diggers, forklifts, pumps, generators, air compressors, drills or similar equipment designed for use principally off public roads are not 'motor vehicles' if the claimed injury involving such equipment occurred at the worksite on or after October 1, 1983."

The plaintiff's brief directs very few remarks to this particular statutory language. From the briefs and affi-

davits and photographs submitted there is no doubt that the Clark Michigan 55 B was "designed for use principally off public roads." See id. The plaintiff never takes issue with this characterization of the Clark Michigan 55 B involved in this accident. In fact, it is difficult to imagine what else these payloaders could have been *designed for* except for construction sites off public roads.

Furthermore, nothing in the statutory language would permit the court to construe "worksite" so as to exclude areas of construction activity on or near highways. The type of equipment referred to in the 1983 amendment to § 31-293a is not designed for work on roads while they are open to the public. The statute specifically mentions certain vehicles that are not to be considered "motor vehicles" when involved in worksite accidents and characterizes them as "designed for use principally off public roads." Vehicles explicitly mentioned are "bulldozers," "graders," "powershovels." An argument cannot be seriously made that these explicitly mentioned vehicles somehow, even for § 31-293a purposes, become "motor vehicles" when they are involved in a highway "worksite" accident.

The result can be no different as regards a vehicle such as the Clark Michigan 55 B, which, although not explicitly mentioned in the amendment to § 31-293a, is also "designed for use principally off public roads." The plaintiff concedes that the vehicle involved in this accident was "designed. . . [for] earth moving and shoveling." Thus, the plaintiff does not seriously contest the defendant's assertion in his brief that the Clark Michigan 55 B's "principal uses are obviously connected with earthmoving and other construction orientated tasks that 'intrinsically' take place 'off public roads.' " See id.

The plaintiff's previously mentioned argument that irrespective of what purposes the Clark Michigan 55 B was designed for, it was not being used for those purposes, has even less obvious relevance as regards the interpretation of the amendment to § 31-293a. The language refers simply to contractors' mobile equipment *designed* as off road equipment, cites several vehicles as specific examples and then provides that all such vehicles are not "motor vehicles," but only if any injury caused by their operation occurred at a *worksite.* "Worksite" is the controlling language as to whether the motor vehicle exception to the statute should apply to "contractors' mobile equipment." The 1983 amendment was passed into law to simplify and clarify matters for the courts, not to involve them in endless scholastic disputes and hairsplitting exercises over, for example, what the essence of a bulldozer is and whether it was being used as bulldozers are wont to be used at a worksite. If a bulldozer or any other piece of "contractors' mobile equipment" is involved in an accident at a worksite, it is not a "motor vehicle" for § 31-293a purposes.

Finally, the plaintiff advances an argument alluded to throughout her brief that is rooted in an appeal to general policy considerations. Basically, the plaintiff claims that at the time of the accident the payloader was being used for its weight and tires to compact earth just like any run-of-the-mill motor vehicle—a car or truck, for example. The plaintiff concludes her argument by saying that "it would contort proper reasoning to hold that no matter how a vehicle was used or no matter what the circumstances or location of a particular accident a payloader vehicle must be considered 'special mobile equipment' as the defendant urges. This indeed would be dangerous public policy in derogation of the public interest in motor vehicle safety and appropriate usage of the public highways."

As the defendant notes in his brief, this argument does not "appreciate the statutory structure" that the court has tried to analyze. Perhaps there are circumstances where a vehicle that might be characterized as "special mobile equipment" should in the circumstances of a particular accident be defined as a "motor vehicle"—thus where such a vehicle, no matter what it was designed for, is used more than incidentally on a highway and an accident occurs on a highway while it is being so used. The "contractors' mobile equipment" definition in the body of § 31-293a is limited to equipment operated at a "worksite" and the same equipment might be a "motor vehicle" if the accident occurred on a highway open to the public if the equipment was not being used to perform construction work. For the reasons mentioned by the court earlier in this opinion the facts of this case and the circumstances of this accident, however, do not present these more difficult analytical situations.

What the plaintiff's argument really fails to appreciate is the basic reason for the motor vehicle exception in § 31-293a. The 1983 amendment to the statute was passed only to assist the courts in implementing this objective. *Dias* v. *Adams,* supra, 189 Conn. 354, provides a concise statement of the policy behind the exception. "Although the legislative history of § 31-293a is not especially revealing, there is some evidence that the intention was to distinguish 'simple negligence on the job' from negligence in the operation of a motor vehicle. Unlike the special hazards of the work place, the risk of a motor vehicle accident is a common danger to which the general public is exposed. Particular occupations may subject some employees to a greater degree of exposure to that risk. The nature of the risk remains unchanged, however, and in many employments it is no greater than for the general public. The legislature has chosen, therefore,

not to extend the immunity given to fellow employees by § 31-293a to accidents having a less distinct relationship to the hazards of the employment. At the same time it has accorded the injured employee, in addition to workers' compensation, the same remedy he would have against a member of the general public who caused a motor vehicle accident." Id., 359.

The plaintiff has not disputed any of the factual assertions in the defendant's brief as to how this accident happened. On December 18, 1987, the plaintiff's decedent and the defendant were working on a sewer project; they were involved in digging and refilling a trench across to Route 1 in Orange. The two northbound lanes were closed and traffic was diverted to the southbound lanes. Plates put over a trench to allow traffic to pass were removed, a portion of the trench was filled with dirt and gravel and the defendant was directed to use the Clark Michigan 55 B to compact the refilled portion of the trench preparatory to repaving. The accident occurred when the defendant reached the end of the refilled portion of the trench adjacent to the open portion. The machine rolled forward into the hole where the plaintiff's decedent was working and caused the fatal injuries.

The plaintiff's decedent, on the day in question, where he was working, subjected himself to the "special hazards of the workplace." The risk of injury he faced was not that risk of a motor vehicle accident faced by the general public as a "common danger." Clearly, the accident here had a "distinct relationship to the hazards of the employment." Id., 359–60. The general public is not exposed to the risk entailed by working in an open trench in close proximity to a piece of heavy construction equipment compacting earth in a portion of that trench. The plaintiff's decedent was not facing the hazards encountered by the general public as

motorists or even pedestrians walking on or alongside a highway open to the public.[3]

Thus, arguments framed in terms of general policy considerations really favor the defendant's position and lead the court to conclude that under the statutory scheme the Clark Michigan 55 B involved in this accident was not a "motor vehicle" as defined in § 31-293a. Holding otherwise would have nothing to do with upholding the interest in motor vehicle safety or the appropriate use of the highways as those terms are even commonly understood.

The court is mindful of the impact its decision will have on the widow of the decedent but feels constrained by its reading of the statutes to grant the defendant's motion for summary judgment.

---

[3] Even if a car or truck had been used instead of the Clark Michigan 55 B to compact earth and the accident occurred just as it did here, analytically speaking, an argument could be made that, if the purpose behind the "motor vehicle exception" in General Statutes § 31-293a as set forth in *Dias* v. *Adams,* 189 Conn. 354, 456 A.2d 309 (1983), were to be extended to its logical conclusion, and the statute reworded accordingly, workers' compensation should be the exclusive remedy. The injury suffered and the risk assumed by the worker in that situation would still not be of the type faced by the general public in regards to ordinary usage of motor vehicles. That public does not work in trenches, and cars and trucks are not customarily used to compact earth on or near roads closed to the public in construction worksite areas. The fact that the statutory language was not written as expansively as it could have been to accomplish completely its purported purpose does not mean that what that language did effect toward that end—exclusion of "contractors' mobile equipment" from the definition of "motor vehicle"—should be emasculated by judicial embroidery and unjustified interpretations of particular statutes finding no basis in the purposes of the statutory scheme.