[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
The plaintiffs, Andrea and Henry Buermeyer, instituted this action against one defendant, Women's Center of Southeastern Connecticut, Inc. (Women's Center), by filing a three count compliant on December 1, 1992, which was subsequently revised on November 10, 1993. The claims sound in wrongful termination and discrimination based on filing worker's compensation claims which allegedly violates General Statutes § 31-290a, breach of contract, and loss of consortium.
The defendant hired Andrea Buermeyer (Buermeyer) in July 1986. Upon being hired, the plaintiff signed a statement that she read and understood the defendant's personnel policy. The relevant part of that policy is part III titled "Employment Procedure." The pertinent part states:
E. Dismissal
 1. The Board has the authority to dismiss the Executive Director . . . and the Executive director has the authority to dismiss all other employees.
a. All Employees:
 (1) The employee will be informed of dissatisfaction in writing concerning his/her work and will be provided an opportunity to improve (unless otherwise stipulated). CT Page 770
 In the event of an unfavorable evaluation, or as a result of poor work, the employee will receive a written warning. (A warning is not subject to the Women's Center grievance procedure.) Within thirty (30) days, the employee will be re-evaluated, and, if no significant improvement of work has occurred, grounds for immediate dismissal exist.
* * *
 (4) In cases such as insubordination or where, in the opinion of the Executive Director, the employee is not making an effort to perform his/her responsibilities, or where continuation of an employee would be detrimental to the agency, the employee may be terminated without thirty (30) days notice.
 Employees terminated without advance notice shall be told in writing of Women's Center grievance procedures.
 (5) The Executive Director, whenever possible, will discuss any disciplinary action with the President of the Board prior to taking such action. If the Executive Director is unable to do so, she will notify the President as soon as possible.
The plaintiff was hired originally as a shelter coordinator. She received successive assignments as resource coordinator in 1987 and as assistant director in 1988. When the defendant's Executive director left in December 1990, the plaintiff assumed duties as the Acting Executive Director from January until April 1991, in addition to her regular duties as assistant director. During that five month period, the defendant's search committee evaluated candidates for the position of Executive Director.
On March 11, 1991, the plaintiff applied for the Executive Director position. In support of her application, she admitted submitting falsified college transcripts. The plaintiff subsequently withdrew her application on April 29, 1991 after the CT Page 771 defendant learned of the false documents. The defendant issued a letter of warning to the plaintiff concerning her unethical behavior. However, the defendant argues that the basis for terminating the plaintiff is poor job performance, not unethical behavior.
Then on September 11, 1991, the defendant issued a second letter of warning to the plaintiff. This letter addressed the plaintiff's performance in her capacity as Acting Executive Director, a position which she did not occupy from June 1991 until her dismissal in November 1991. The letter addressed performance deficiencies which the plaintiff could not correct. She had no opportunity to correct her performance because the defendant removed her from Acting Executive Director and the plaintiff did not have the same duties and responsibilities after the letter of warning was issued.
The defendant wrote a three month evaluation discussing the plaintiff dated October 22, 1991. This evaluation discussed the plaintiff's poor performance in her job as the assistant director for the period July 15 to October 15, 1991. The plaintiff reported ill on October 7, 1991 and did not work. Beginning October 22, 1991, on the advice of her doctor, the plaintiff requested a medical leave of absence. On 5 November, 1991, the defendant requested that the plaintiff submit to a psychiatric medical evaluation. However, the plaintiff did not file the worker's compensation claim which listed as the cause of the illness "emotional stress from work activities over the past year" until November 8, 1991. The defendant notified the plaintiff by letter dated November 15, 1991 that her employment was terminated effective at 5:00 pm that day.
DISCUSSION
The standard for considering a motion for summary judgment is well established. Pursuant to Practice Book § 384, summary judgment "shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which entitle him to judgment as a matter of law. Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105
(1994); D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434
(1980). CT Page 772
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . the test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) Connell v. Colwell,214 Conn. 242, 246-47 (1990).
"It [summary judgment] is . . . apt to be ill adapted to cases of a complex nature or to those involving important public issues, which often need the full exploration of trial. . . . It is also well recognized that summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions. . . . It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given to their testimony can be appraised." (Citations omitted; internal quotation marks omitted.) United Oil Co. v. Urban Redevelopment Commission,
supra, 158 Conn. 375-76. See: Suarez v. Dickmont Plastics Corp.,
supra, 229 Conn. 111.
"If an issue of fact does exist, the trial court cannot try that issue. . . . The nonmovant has a constitutional right to have a jury decide any issue of fact." (Citations omitted.)Ferreira v. Pisaturo, 41 Conn. Sup. 326, 335, 574 A.2d 1324
(1989), aff'd 215 Conn. 55, 573 A.2d 1216 (1990). "Issue of fact encompasses not only evidentiary facts in issue but also questions as to how the trier would characterize such evidentiary facts and what inferences and conclusions it would draw from them. . . . [S]ummary judgment is to be denied where there exist genuine issues of fact and inferences of mixed law and fact to be drawn from the evidence before the Court. . . . In United Statesv. Diebold, Inc., 369 U.S. 654, 655, the United States Supreme Court noted that summary judgment should have been denied where a study of the record revealed that inferences contrary to those drawn by the trial court might be permissible and thus raise a genuine issue as to the ultimate facts." (Citations omitted; internal quotation marks omitted.) United Oil Co. v. UrbanRedevelopment Commission, supra, 158 Conn. 379.
"Our Supreme Court has set forth the allocation of burdens of proof and order of presentation of proof in discrimination cases brought pursuant to [General Statutes §] 31-290a in Ford v. BlueCross Blue Shield of Connecticut. Inc., 216 Conn. 40, CT Page 773578 A.2d 1054 (1990). The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . . In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. . . . If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. . . . If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy her burden of persuading the factfinder that she was the victim of discrimination either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Citations omitted; internal quotation marks omitted.) Erisoty v. Merrow Machine Co.,34 Conn. App. 708, 710-11, 643 A.2d 898 (1994). See Ford v. BlueCross Blue Shield of Conn., 216 Conn. 40, 578 A.2d 1054 (1990),McDonnell Douglas Corporation v. Green, 411 U.S. 792,93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
The plaintiff has presented evidence that gives rise to an inference of unlawful discrimination. The plaintiff met her burden by supporting her allegations that she suffered dysfunctional emotional stress in the course of her employment, that the defendant had knowledge of the plaintiff's claimed condition prior to the actual filing of the worker's compensation claim, and that the later "legitimate" termination of the plaintiff could be pretextual. According to Erisoty the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. This, the defendant has done. The defendant argues that the plaintiff's job performance was poor and that it properly documented her performance, provided her the opportunity to improve, followed its personnel procedures and was justified in terminating the plaintiff based on her poor performance. At this point a genuine issue as to material facts exists. The plaintiff has demonstrated a prima facie case of wrongful termination and the defendant has proffered evidence which rebuts the presumption of wrongful termination. According to Erisoty "the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy her burden of persuading the factfinder that she was the victim of discrimination either directly by persuading the court CT Page 774 [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Erisoty v. Merrow MachineCo., supra, 34 Conn. App. 710-11. The court finds that material issues of fact exist and summary judgment against count one, wrongful termination, is inappropriate. As count three claims loss of consortium and is derivative of count one, summary judgment is likewise inappropriate against count three.
The defendant argues further that it is entitled to summary judgment on the second count, breach of contract, because the personnel manual creates no contract and the employment is at will. The defendant misstates the law in Connecticut. In Finleyv. Aetna Casualty; 202 Conn. 190, 520 A.2d 208 (1987); our supreme court "stated that employers can protect themselves against employee contract claims based on statements made in personnel manuals by including appropriate disclaimers against an intention to form a contract." Lawrence v. Summit Corporation ofAmerica Inc., 8 CSCR 402 (March 22, 1993, Spallone, J.) citingFinley v. Aetna Casualty, supra, 202 Conn. 199, n. 5. The defendant's personnel manual contains no such disclaimer. Absent the disclaimer, "the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." Finleyv. Aetna Casualty, supra, 202 Conn. 199.
In the alternative, the defendant argues that if the manual does form a contract, it followed the procedure outlined in the manual and, as a matter of law, did not breach the contract. The defendant wrote three letters of warning to the plaintiff, one over unethical conduct, one over poor performance in her capacity as Acting Executive Director and one concerning her poor performance in her capacity as assistant director. The defendant appears to base the plaintiff's termination on the final letter of warning concerning her duties as assistant director which was dated October 22, 1991. Buermeyer was terminated effective November 15, 1991, within thirty days of the October 22 letter, as provided by paragraph E1a(1) of the personnel manual. However, a question of fact exists concerning which paragraph in the personnel policy manual the defendant used to terminate the plaintiff. Therefore, summary judgment as to the second count, breach of contract, is inappropriate.
CONCLUSION
CT Page 775
The court finds that there are material issues of fact with regards to the plaintiff's termination and the procedural method used by the defendant to effect the termination. Therefore, the defendant Women's Center of Southeastern Connecticut, Inc.'s motion for summary judgment is hereby denied.
Hurley, J.