PERCY S. HILDRETH ET AL. (R. W. HILDRETH & Co.) *vs.* THE HARTFORD, MANCHESTER AND ROCKVILLE TRAMWAY COMPANY.

First Judicial District, Hartford, March Term, 1901.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

By written agreement the plaintiff contracted to build and complete for the defendant an electric railway between designated points, in accordance with certain specifications which were attached to and formed part of the written instrument. The specifications declared, among other things, that the contractor was " to furnish first-class material and workmanship in every particular, and to provide for a complete piece of work," and that " any omission that may have been made to obtain these results is to be regarded as if specified." The plaintiff, having finished the work and received the contract price therefor, sought in this action to recover for alleged extra work in grading. *Held* that the contract was free from doubt and ambiguity in its terms and subject-matter, and therefore parol evidence of previous negotiations, offered by the plaintiff to show that the grading in question was not covered by the agreement, was properly excluded by the trial court.

Argued March 5th—decided April 17th, 1901.

ACTION to recover for work and labor done and materials furnished in grading and constructing a street railway,

brought to the Superior Court in Tolland County and tried to the jury before *Ralph Wheeler, J.;* verdict and judgment for the plaintiffs for $462, and appeal by each party for alleged errors in the rulings and charge of the court. *No error.*

The complaint in this case was the common counts with a bill of particulars. The only item in that bill which is involved in the plaintiff's appeal is the first one, viz: "To grading in connection with construction of tramway from Talcottville to and into the city of Rockville, $5,967.99." In their specific statement under this item the plaintiffs allege that it applies to the whole line of construction between Talcottville and the city of Rockville; the work having been rendered upon the whole line, in some points more and in some points less, but that the actual work was distributed over the whole line between the points referred to.

The facts upon which this claim arises, as they appear in the finding, are, in brief, as follows: The plaintiffs on the 26th day of June, 1897, entered into a written contract with the defendant to construct a line of electric railway from the village of Talcottville to the city of Rockville. So much of that contract as is necessary to understand the respective claims of the parties is as follows: "This agreement by and between the Hartford, Manchester & Rockville Tramway Company, . . . party of the first part, and R. W. Hildreth & Co., . . . party of the second part, . . . witnesseth: The second party, in consideration of the promises and covenants of the first party herein contained, by it to be kept and performed, covenants and agrees to and with the first party, to construct a line of electric railway in the town of Vernon and city of Rockville, Tolland County, Connecticut, commencing at the terminus of the said tramway's track at Talcottville, and thence along the layout in said town and city to the west side of Market Street, in the city of Rockville, as accepted and approved by the selectmen of the town of Vernon and the municipal authorities of the city of Rockville, and in accordance with survey and plan made for said company by William H. Olmstead, civil engineer, and in accordance with the specifications hereto attached, marked: 'Specifications

for Track and Overhead Line along the Layout of the Hartford, Manchester & Rockville Tramway Company,' and made part of the contract; and in accordance with the plans and specifications dated February 9th, 1897, furnished by the New England Railway Company, for the bridge, entitled 'Bridge No. 4,' at the under-crossing of the Melrose Branch Steam Railroad, and also in accordance with the plans and specifications hereto attached, furnished by the Tramway Company's engineer, for the bridge across the pond at Talcottville, also made a part of this contract, and also in accordance with the plans and specifications for track and overhead line from Windsor Avenue to Market Street in the city of Rockville, hereto attached and made a part of this contract. To commence the work of construction immediately, and to complete the same. . . . The first party, in consideration of the promises and covenants of the second party herein contained, by it to be kept and performed, hereby covenants and agrees to and with the second party to pay said second party for the said construction the sum of $27,900, and in addition 14.3 cts. per lineal foot '0000' feeder erected. Payments to be made as follows: . . . "

All the specifications referred to were attached to the contract. Among the specifications there is one, twice repeated, in these words: "In general, it is the intention of these specifications for the contractor to furnish first-class material and workmanship in every particular, and to provide for a complete piece of work. Any omission that may have been made to obtain these results is to be regarded as if specified."

It was agreed that the plaintiffs had done the work and completed the said tramway; it was also agreed that the contract price had been paid.

The amount charged in the bill of particulars, and which the plaintiffs claimed to recover, was for extra grading done at various points along the highways from Talcottville to Market Street in the city of Rockville. The controversy in the case was wholly about this item. The plaintiffs claimed that it was outside of their contract, and the defendant that it was within it.

The plaintiffs offered certain parol evidence, and in connection with that offer made certain claims in respect to the said contract. The court refused to receive the parol evidence. The claims of the plaintiff in this behalf were: " *First.* The written contract is ambiguous as to what grading is required to be done under it, and the evidence offered by the plaintiffs to interpret it should have been received. *Second.* If not ambiguous as to what grading is required, it is uncertain and indefinite as to the quantity of that grading, and the evidence offered by the plaintiff to remove that uncertainty and indefiniteness should have been received. *Third.* If the contract is unambiguous as to the grading required to be done under it, but is uncertain and indefinite as to the quantity of that grading, to wit, the number of cubic yards of grading required, then that quantity is fixed by the proposal of the plaintiffs, dated April 29th, 1897, and the acceptance of that proposal by the vote of the board of directors of the defendant company upon the same day, and evidence of the proposal and acceptance should have been received for the purpose of showing that interpretation of the contract upon which the minds of the parties met when they entered into it." The court held that the contract was not ambiguous, and ruled that the parol evidence was not admissible.

The errors assigned are the refusal of the court to admit the parol evidence offered to support these claims, and the overruling of the claims.

*Samuel Hoff*, of New York, and *Frank L. Hungerford*, for the plaintiffs.

*Edward D. Robbins* and *Charles Phelps*, for the defendant.

ANDREWS, C. J. The record before us shows that the parties to this action entered into an agreement and reduced that agreement to writing. By the terms of that writing the plaintiffs contracted to build and complete a line of electric railway from the village of Talcottville in the town of Vernon to and into the city of Rockville, according to certain specifi-

cations attached to and made a part of the writing. These specifications required the plaintiffs to furnish first-class material and workmanship in every particular and to provide for a complete piece of work; and declare that the specifications shall be regarded as including everything necessary to obtain that result. This language of the specifications is twice repeated. The plaintiffs have completed the said line of railway, and the defendant has paid the stipulated price.

In this action the plaintiffs seek to recover for the grading mentioned in their bill of particulars, because, as they say, it was work not called for by their agreement, but was extra work, outside of and not included in the written agreement. The defendant, on the other hand, insists that all the grading was required by the written stipulations of the agreement. To support their contention the plaintiffs upon the trial in the Superior Court offered certain parol evidence which they said that court ought to receive, and to consider the facts thereby proven in the construction of their said writing. They said that if these facts were considered, it would clearly appear that the grading charged in their bill was not included in their agreement, but was extra work. The court refused to admit this evidence. The plaintiffs now say this was error. If this ruling was correct, then the other errors assigned become unimportant.

The law is very firmly settled that "when parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous *colloquium* between the parties, or of conversation or declarations at the time it was completed or afterwards, as it would tend, in many instances, to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected. In other words, as the rule is now more briefly expressed, 'parol contemporaneous evidence is inadmissible to contradict or vary the

terms of a valid written instrument.'" As to the words in which a written obligation is expressed, this rule is never departed from. The parties having constituted the writing to be the only outward and visible expression of their meaning, no other words are to be added to it or substituted in its stead. 1 Greenl. on Ev. §§ 275, 277, 282, 286, 288 ; *Galpin* v. *Atwater*, 29 Conn. 93, 97 ; *Beard* v. *Boylan*, 59 id. 181 ; *Jackson* v. *Alsop*, 67 id. 249, 252.

Where language is used in any written instrument which in its primary meaning is unambiguous, and in which that meaning is not excluded by the context, and is sensible with reference to the extrinsic circumstances in which the parties to the instrument were placed at the time the writing was made, such primary meaning must be taken conclusively to be that in which the parties used it ; such meaning in that case conclusively states the intention of the parties, and no evidence is receivable to show that in fact the parties used the language in any other sense, or had any other intention. *Benedict* v. *Gaylord*, 11 Conn. 332; *Elliott* v. *Weed*, 44 id. 19, 23; *Shore* v. *Wilson*, 9 Cl. & Fin. 355, 525 ; Whart. on Ev. § 936.

It is true that in many instances parol testimony is received in connection with a written instrument; but this is done always to enable the court to understand the meaning of the words the parties have used, never to change, vary or contradict them. In other words, parol evidence may be received to enable the court to identify the persons and things to which the instrument refers. *Bank of New Zealand* v. *Simpson*, L. R. (1900) App. Cas. 182.

The parol evidence offered in the present case was not for the purpose of aiding the court to identify any person or thing referred to in the contract, but for a very different one. The contract was made on the 26th day of June, 1897. The words and expressions in it are all used in their plain, ordinary and common meaning. There is no ambiguity or uncertainty in the contract in this respect; nor is there any doubt as to the subject-matter of the contract. It was the building and complete construction of a certain line of elec-

tric railway therein mentioned. From the questions asked and the statement of counsel, it would appear that the parties had been in treaty in respect to the building of this railway for several weeks before the contract was executed; that on the 29th day of April, 1897, the parties had a meeting at which certain negotiations were had, partly oral and partly in writing. The plaintiffs made a proposition to the defendant, and the defendant, by a vote, agreed to accept it. But no contract was that day entered into. At that meeting some of the persons had a map and a profile of the proposed railway, and these were discussed; certain computations according to this profile were made or were talked about by the plaintiffs and the engineer of the defendant, and the amount of grading that would be required. The parties separated and took further time for deliberation. They had abundant opportunity to make other or further inquiry and examinations of the proposed route, or to have other negotiations. Two months afterwards they again met and executed and delivered the contract on which this suit is brought.

The parol testimony offered by the plaintiffs was to prove some things that were said and done at that meeting between the parties on the 29th day of April. This was offered for the purpose of putting a construction on the written contract made two months afterwards; that is, to show that the amount of grading which the plaintiffs had by their contract agreed to do was not the whole amount required to make "a complete piece of work," and which they had in fact done, but a much less amount.

We think this evidence was inadmissible. The ruling of the court was clearly correct. There was before that court a case in which the parties without haste, indeed after quite extended and deliberate examination and negotiation, had made a written contract. There was no doubt or ambiguity as to the subject-matter of the contract. Fraud was not even suspected. There was not a word in the writing nor an expression which was used with any other meaning than its plain and common one. Under such circumstances there could be no other rule than that the writing must be taken,

and taken conclusively, to be the final expression of the intention of the parties. This was the rule which the court applied. *Averill* v. *Sawyer*, 62 Conn. 560; *Caulfield* v. *Hermann*, 64 id. 325; *Hills* v. *Farmington*, 70 id. 450; *Hartford Bldg. & Loan Assn.* v. *Goldreyer*, 71 id. 95.

The other assignments of error are immaterial.

There is no error.

In this opinion the other judges concurred.