THE FIDELITY AND CASUALTY COMPANY *vs.* THE THAMES FERRY COMPANY.

Second Judicial District, Norwich, October Term, 1909.

BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

Oral evidence is inadmissible to explain or control the unambiguous terms of a written instrument.

A policy issued to a ferry company insuring it against losses from injuries sustained by its passengers while on its boats or in its ferry-houses, provided that the premium therefor should be computed upon the " traffic earnings " during the period covered by the policy. *Held* that inasmuch as the words quoted were in themselves free from ambiguity, and nothing in the context or surrounding circumstances tended to limit or qualify their ordinary meaning, the trial court erred in admitting oral evidence that the parties in fact intended, by the use of this expression, earnings derived from passenger traffic only.

Argued October 19th—decided December 17th, 1909.

ACTION to recover a balance alleged to be due as yearly premiums on three policies of liability insurance, brought to the Court of Common Pleas in New London County and tried to the court, *Waller, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *Error and new trial ordered.*

*Hadlai A. Hull* and *Frank L. McGuire,* for the appellant (plaintiff).

*Donald G. Perkins,* for the appellee (defendant).

THAYER, J. It appears from the admitted facts in the pleadings, that the plaintiff, by its policies of insurance or contracts of indemnity, undertook to insure the defendant, whose business was that of conducting a public ferry across the Thames River at New London, against liability to its passengers for accidental injuries, fatal or otherwise, sustained by them while on or about the ferry-boats or in the ferry-houses owned or occupied by the defendant. There were three policies, each for the term of one year, covering three successive years, beginning December 1st, 1900. They were alike in terms except as to dates, and, in addition to the indemnity against liability to passengers, insured the defendant against liability for injuries to its employees. The latter indemnity is upon a separate and distinct consideration, and that part of the contract is not in question in the case. We speak of the policies and premiums, therefore, only as related to the passenger indemnity.

The policies are made a part of the complaint. Each contains the following clause relating to the premiums to be paid for passenger indemnity. "This premium is based on the traffic earnings during the period of this Policy. This amount is estimated at $9,000, and the premium rate is $2.00 for each $100 of Traffic earnings. If the traffic earnings actually exceed the sum stated above, the Assured shall pay the additional premium earned; if less than the sum stated, the Company shall return to the Assured the unearned premium pro rata." The defendant, upon the delivery of each policy, paid the plaintiff $180, the amount of the premium based upon the estimated earnings, and, upon the expiration of the last of the three policies, paid the additional sum of $87.06 on the premium on that policy.

The defendant admitted upon the trial that the plaintiff had performed all the terms and conditions of the policies which were to be performed by it, and after this admission the only issue between the parties upon the pleadings was whether the traffic earnings exceeded the estimated

amount of $9,000, the complaint alleging that they did and the answer denying it. The plaintiff proved, and the court has found, that the defendant's entire traffic earnings in each year covered by the policies was largely in excess of $9,000; but the defendant claimed, and against the plaintiff's objection was permitted to offer evidence to prove, that by the words "traffic earnings" in the policies was intended the earnings from passenger traffic only; and from the facts found from the evidence so permitted, the court held in accordance with the defendant's claim, and rendered judgment for the defendant because the plaintiff had failed to prove the amount of the earnings from passenger traffic.

The plaintiff asks that the finding be corrected by striking out the facts from which this conclusion was reached as being unwarranted by the evidence, and assigns error upon the ruling of the court admitting the evidence.

The court in admitting the evidence held that the contract was ambiguous, but the defendant now, in support of the judgment, contends that from the contract alone it appears that "traffic earnings" mean earnings from the carriage of passengers, because it is said the carriage of passengers is the traffic about which it appears that the parties were contracting. The contract, however, is one of indemnity. The plaintiff agrees to indemnify the defendant against liability for injuries to passengers. The defendant is to pay for such indemnity. The passengers are described as those carried on the defendant's vessels, and the injuries as those sustained by the passengers while on or about such vessels or the defendant's ferry-houses. But the contract was for the assumption of a risk by the plaintiff for which the defendant was to pay. The amount of compensation need have no relation to the earnings derived from the carriage of the passengers. It might be fixed by the parties at a stated sum, or made to depend upon the number of passengers, or upon the entire earnings of the boat, or the earnings from the passengers, or fixed in some other way.

The endeavor would be presumably to make the compensation commensurate with the risk and fair to the assured. The risk would necessarily be greater if animals, vehicles, hay, wood, machinery, and explosives were transported, than it would if only passengers were carried. So far as appears, therefore, the premium could as well be based upon the entire earnings of the boat as upon those derived from the carriage of passengers.

The words "traffic earnings," taken in their ordinary sense, are, as the trial court held, free from ambiguity and include all traffic earnings from all sources. There is nothing appearing in the contract itself which limits their meaning to earnings from passenger traffic only.

Nor is there anything in the language of the contract to render doubtful or ambiguous the meaning intended. The meaning of the language is clear and comprehensible when the words, taken in their ordinary sense, are considered in relation to the context and the surrounding circumstances. In such a case it is not permissible to show that the parties in fact intended something else. The words are taken to conclusively express the intention of the parties. *Hildreth* v. *Hartford, M. & R. Tramway Co.*, 73 Conn. 631, 636, 48 Atl. 963. The plaintiff's objection to the extrinsic evidence, to show a different intent, should have been sustained. Having shown that the actual earnings were in excess of the estimated ones, it was entitled to judgment.

This conclusion renders a consideration of the other assignments of error unimportant.

There is error and a new trial is ordered.

In this opinion the other judges concurred.