# Thomas J. Plunkett *v.* Nationwide Mutual Insurance Company et al.

Baldwin, C. J., King, Murphy, Shea and Alcorn, Js.

Argued October 4, 1962—decided January 3, 1963

*David M. Reilly, Jr.,* for the appellant (plaintiff).

*George E. McGoldrick,* with whom, on the brief, was *David E. FitzGerald, Jr.,* for the appellee (named defendant).

SHEA, J.  On June 6, 1955, Margie Hurayt, the owner of an automobile insured by the named defendant, hereinafter referred to as Nationwide, was employed as a waitress in the Biltmore Restaurant in New Haven.  On that day, she parked her car across the street from the restaurant in a parking lot owned by her employers.  Employees and patrons of the restaurant were permitted to park their cars in the lot free of charge, but other persons were required to pay a fee for parking.  Philip Fleischner, a salaried employee, worked for the owners of the lot as a parking attendant.  It was

his duty to park the cars and move them from place to place in the lot whenever necessary. Fleischner had been instructed by the owners to do this work himself and to come to them for assistance if it was required. When Margie Hurayt parked her car, she left her keys in the car so that it could be moved when necessary. She had, however, told Fleischner that only he or the owners of the lot could move her car. On the day in question, the plaintiff, a patron of the restaurant, went to the parking lot to get his car after eating. Fleischner requested the plaintiff to move the Hurayt car from one space to another, although it was not necessary to move the car to enable the plaintiff to take his car from the lot. While the plaintiff was moving the Hurayt car, he ran into Fleischner and injured him. The plaintiff was doing a gratuitous act for Fleischner and did not have express permission from Margie Hurayt to drive her car. Fleischner brought a civil action against the plaintiff and Margie Hurayt and recovered a judgment against the plaintiff only. *Fleischner* v. *Plunkett,* Superior Court, New Haven County, No. 83305. In that action, Nationwide defended Margie Hurayt, but it has refused at all times to defend the plaintiff.

The plaintiff commenced the present action, claiming that he was insured under a policy of insurance issued by Nationwide to Margie Hurayt. He requested damages and an order compelling Nationwide to pay any judgment rendered against him on account of the accident. In its answer, Nationwide admitted that the Hurayt car was insured by it but denied all the other material allegations of the complaint. Nationwide further pleaded, by way of special defense, that the plaintiff was not within the coverage of the policy because he (1) was not a

a person coming within the definition of an insured and (2) was excluded from coverage by a specific provision in the policy. In his reply, the plaintiff, after admitting that the policy contained certain quoted language, denied the remaining allegations of the special defense.

The trial court concluded that the plaintiff came within the definition of an insured person under the provisions of the policy, but that persons acting for employees, agents and owners of a public parking lot are excluded from coverage; that the plaintiff was acting for, under the direction of and as the alter ego of Fleischner in the performance of the latter's duties as an employee of the operators of a public parking lot; that the plaintiff was excluded from coverage; and that Nationwide is not legally obliged to pay any judgment rendered against the plaintiff. The court rendered judgment for the defendants, and the plaintiff appealed. In his assignments of error, he has attacked all of the conclusions which relate to his exclusion from coverage under the terms of the policy.

The principal issue on this appeal arises as a result of the trial court's interpretation of the following clause in the policy: "The insurance with respect to any person or organization other than the Named Insured . . . does not apply: (1) to any person or organization, or to any agent or employee thereof, operating . . . [a] public parking place, with respect to any accident arising out of the operation thereof." The plaintiff contends that he was neither an agent nor an employee of any person or organization operating a public parking place and that consequently he was not excluded from coverage under the policy.

Where the terms of an insurance policy are clear

and unambiguous, it is to be interpreted by the general rules governing the interpretation of any written contract. *Downs* v. *National Casualty Co.,* 146 Conn. 490, 494, 152 A.2d 316. If the terms of the policy are clear, they must be given their natural and ordinary meaning. *Smedley Co.* v. *Employers Mutual Liability Ins. Co.,* 143 Conn. 510, 513, 123 A.2d 755; *Raffel* v. *Travelers Indemnity Co.,* 141 Conn. 389, 392, 106 A.2d 716. When the terms are clear, their meaning cannot be forced or strained by an unwarranted construction which gives to them a meaning never intended by the parties. *London & Lancashire Indemnity Co.* v. *Duryea,* 143 Conn. 53, 58, 119 A.2d 325; *Lyon* v. *Aetna Casualty & Surety Co.,* 140 Conn. 304, 308, 99 A.2d 141. The language of the clause in this policy excludes from coverage only certain designated people. It refers to "any person or organization, or to any agent or employee thereof, operating . . . [a] public parking place." There is nothing in the language to render doubtful or ambiguous the meaning intended by this clause. The language is clear and comprehensive, and the words, taken in their ordinary sense, conclusively express the intention of the parties. It is not permissible to amplify or extend their meaning by showing that the parties had, in fact, intended something else. *Fidelity & Casualty Co.* v. *Thames Ferry Co.,* 82 Conn. 475, 478, 74 A. 780. The plaintiff was not operating a public parking place. He was neither an agent nor an employee of a person or organization operating such a parking place. He was merely performing a gratuitous act for Fleischner, who had no authority to obtain assistance from anyone without the consent of his employers, the owners of the lot. When the plaintiff moved the Hurayt car, he was not acting for or

on behalf of those owners. *Kalmich* v. *White,* 95 Conn. 568, 570, 111 A. 845; 5 Blashfield, Automobile Law and Practice (Perm. Ed.) § 2921. He was not one of the persons designated within the class excluded from coverage under this clause of the policy.

Nationwide insists that the plaintiff was acting solely for the convenience of Fleischner and that the action of the plaintiff was, in effect, the action of Fleischner himself. In other words, the claim is made that the plaintiff was the alter ego of Fleischner. Nationwide argues that Fleischner himself would have been excluded from coverage because he was an employee of persons operating a public parking place and that therefore the plaintiff, his alter ego, must also be excluded. Where the principle of alter ego is invoked, the actual doer of the act is not an agent. He is an automaton, a tool actuated by the will of the principal. Seavey, Studies in Agency, p. 79; 1 Mechem, Agency (2d Ed.) § 208; Mechem, Outlines of the Law of Agency (4th Ed.) § 28. The alter ego principle has been invoked almost exclusively in either one of two particular situations. First, the principle has most frequently been considered in cases where a person, because of incapacity or weakness, is unable to sign a written document and uses the hand of another instead of his own while directing and controlling the act of writing. In these cases, the writer is referred to as an "amanuensis." Mechem, Outlines of the Law of Agency (4th Ed.) § 28; Seavey, loc. cit.; for examples of cases, see 1 Mechem, Agency (2d Ed.) § 208 n.; 2 Am. Jur., Agency, § 3. The second class of cases considering this principle involves the operation of an automobile by a person who allows another to drive the car.

In *Archambault* v. *Holmes,* 125 Conn. 167, 4 A.2d

420, we discussed the liability of an automobile dealer for the negligence of a prospective purchaser who was permitted by the dealer's agent, sitting beside him, to drive a car to demonstrate it. We said (pp. 170, 171): "Where one permits another to operate a car but remains in control, the driver is no more than the alter ego of the other and his acts are in effect just as much the acts of that other as though the latter were the one actually operating the car. . . . The seller is absolved only where his agent has abandoned his right to control the operation of the car and surrendered that operation wholly to the purchaser. . . . The principle is the same as that applied in determining whether one who does work for another is his employee or an independent contractor, where we have said: 'The decisive test is who has the right to direct what shall be done and when and how it shall be done? Who has the right to the general control?'" In *Burwell* v. *Neumann,* 130 Conn. 117, 32 A.2d 640, we again considered the liability of the owner of an automobile for damages resulting from the negligence of a driver accompanied by the owner's brother, to whom the car was entrusted. In both of these cases, the driver of the vehicle was accompanied by the person authorized to drive the vehicle.

Cases which have applied the alter ego theory in automobile negligence situations seem to have one common factor: The person to whom the negligence was imputed, because of his right to exercise continued control over the driver, was always in the car with the driver and usually at his side. *Tatlock* v. *Nathanson,* 169 F. Sup. 151, 152 (D. Del.); *Burwell* v. *Neumann,* supra; *Archambault* v. *Holmes,* supra; *Gibbons* v. *Naritoka,* 102 Cal. App. 669, 670, 283 P. 845; *Haynie* v. *Jones,* 233 Mo. App. 948, 952,

127 S.W.2d 105; *Frye* v. *Baskin,* 241 Mo. App. 319, 329, 231 S.W.2d 630; *Wilkins* v. *Page,* 91 N.H. 409, 20 A.2d 647; *Grant* v. *Knepper,* 245 N.Y. 158, 160, 156 N.E. 650; *Taksen* v. *Kramer,* 239 App. Div. 756, 263 N.Y.S. 609; *Beam* v. *Pittsburgh Rys. Co.,* 366 Pa. 360, 364, 77 A.2d 634, cert. denied, 341 U.S. 936, 71 S. Ct. 851, 95 L. Ed. 1364; see also *Reetz* v. *Mansfield,* 119 Conn. 563, 569, 178 A. 53. There may be some authority to the contrary. See *Emison* v. *Wylam Ice Cream Co.,* 215 Ala. 504, 506, 111 So. 216. If a person abandons his right to control the operation of a motor vehicle and surrenders that operation wholly to another, the latter does not act as the alter ego of the one surrendering. *Burwell* v. *Neumann,* supra, 120; *Archambault* v. *Holmes,* supra; *Beaudoin* v. *W. F. Mahaney, Inc.,* 131 Me. 118, 123, 159 A. 567. There can be no doubt that Fleischner abandoned his right to control the operation of the Hurayt car to the plaintiff. The responsibility for its operation had been surrendered by Fleischner, who was walking around the parking lot when he was struck. Obviously, the plaintiff was in complete control of the vehicle and its operation. Fleischner was no longer in a position to exercise the right of control over it. In driving the car, the plaintiff was not acting as the alter ego of Fleischner, and consequently he was not the agent or employee of the operators of the parking lot.

The facts recited in the finding do not support the conclusions reached by the trial court. Nor is there anything to indicate that further facts could be developed on a new trial to bring about a contrary result. The trial court erred in holding that Nationwide was absolved by the exclusion clause from paying any judgment rendered against the plaintiff.

When this action was instituted, the plaintiff summoned as defendants the Travelers Insurance Company; Margie Egan, who was formerly Margie Hurayt, the owner of the automobile; and Philip Fleischner, who is now deceased. The Travelers Insurance Company was joined as a defendant because it was obligated to pay workmen's compensation to Fleischner as an injured employee of its insured. The plaintiff, in his prayer for relief, requested damages and an order compelling Nationwide to pay any judgment rendered against him because of the original action, together with all expenses incurred by him in connection with it. The judgment creditors in the original action did not seek recovery of their judgment under General Statutes § 38-175, which provides that a judgment creditor shall have a right of action against the insurer in case the judgment is not satisfied by the insured within thirty days after its rendition. In the present case, all the parties interested in the outcome were in court. During the trial, Nationwide asked that the judgment be in the nature of a declaratory judgment. The complaint and the request for relief did not conform with our rules concerning declaratory judgments. See Practice Book §§ 277, 278. The prayer for relief in an action seeking a declaratory judgment must state with precision the declaratory judgment desired. *Kievman* v. *Grevers,* 122 Conn. 406, 412, 189 A. 609. The case, however, appears to be one where relief in the nature of such a judgment would finally settle and determine the rights of all the parties. Opportunity must be provided for the ascertainment of the amount now due on the judgment in the original action. If that judgment was apportioned under General Statutes § 31-293 (formerly § 31-156), because of the payments made

or due to Fleischner on account of workmen's compensation, then that apportionment should be reflected in the judgment in the present case. This could be accomplished if the parties, on their request, are permitted to seek relief in the form of a declaratory judgment. To this extent, further proceedings are necessary in the trial court.

Nationwide filed a bill of exceptions. The claims presented therein were not pursued in the brief. They are therefore treated as abandoned. *Donch* v. *Kardos,* 149 Conn. 196, 199, 177 A.2d 801; *West Realty Co.* v. *Ennis,* 147 Conn. 602, 603, 164 A.2d 409.

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.