[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Motion For Summary Judgment [124]
Plaintiff asks the court to abandon common sense.
Plaintiff, Ronald Surprenant-, and defendant, John. Burlingham, were employees of the Old Lyme Development Corporation [Old Lyme] on March 22, 1997. On that day, both were working at an off-highway construction project. Defendant was the operator of a front end loader owned by Old Lyme. Old Lyme had a Mack dump truck which had a defective electrical starter. In order to start the Mack, it was jump started. This was done by having someone in the truck release the clutch thereby engaging the gears as the truck was pushed or pulled by the front end loader. When the engine started, the person in the truck would operate the truck to control its movement and direction.
On March 22, 1997, the truck stalled while plaintiff was using it. He walked to another area of the construction site where defendant was working with the front end loader. He told defendant the truck had stalled and needed a jump start. Together, plaintiff and defendant went to the truck on the front end loader. A chain was attached to the truck and the front end loader. Plaintiff sat in the truck, depressing the clutch pedal, ready to release the clutch when it was moving fast enough to jump start the engine. Defendant operated the front end loader as it pulled the truck. When the truck had moved approximately three feet, the chain broke or came loose at or near the place where it had been attached to front end loader. The chain "flew through the windshield of the dump truck, striking the plaintiff in the head. . . ." Amended Complaint, November 11, 1999, ¶ 4. [129] CT Page 4007
Plaintiff brought this action claiming defendant's negligence caused the accident and the injuries plaintiff suffered.
Defendant plead the exclusivity provisions of the Workers Compensation Act. C.G.S. § 31-293a. See Second Special Defense, Answer To Amended Complaint Dated March 8, 1999, April 21, 1999, p. 3. [121] Plaintiff concedes he has received the benefits afforded by the Workers' Compensation Act.
Plaintiff denied the Second Special Defense. Reply, June 14, 1999. [123] Plaintiff-relies upon the "motor vehicle. exception" to the exclusivity bar of the Workers' Compensation Act. The focus here is on C.G.S. § 31-293a, a part of the Workers' Compensation Act. It provides:
 "No action may be brought against a fellow employee unless the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1." C.G.S. § 31-293a.
Defendant has moved for summary judgment. Motion For Summary Judgment, August 27, 1999. [124] He relies on the exclusivity bar of the Workers' Compensation Act and also claims he was not engaged "in the operation of a motor vehicle" when the accident occurred.
There is no question that the plaintiff and defendant were fellow employees of Old Lyme. Plaintiff contends the dump truck was a "motor vehicle as defined in section 14-1" and that defendant was engaged "in the operation of [that] motor vehicle at the time of the accident."
There is no real dispute that the truck is a "motor vehicle." The court holds the dump truck was a motor vehicle.
The parties' real dispute is whether defendant was operating the dump truck. Clearly the defendant was operating the front end loader. However, plaintiff claims that defendant also was operating the dump truck at the same time.
"The gravamen of the plaintiff's complaint is that he was injured as a result of the defendant's negligent movement, direction or control of the 1967 Mack truck. CT Page 4008 The plaintiff contends that the defendant's negligent movement of the Mack truck at the time of the accident constitutes `operation' of the truck by the defendant, under C.G.S. § 31-293a." Memorandum In Opposition To Motion For Summary Judgment, November 11, 1999, p. 2. [130]
Plaintiff acknowledges "[operation is not defined in Section31-293a or in title 14 of the Connecticut General Statutes." Supplemental Memorandum In Opposition To Motion For Summary Judgment, December 6, 1999, p. 10. [133]
According to plaintiff, our case law requires the court to conclude that the defendant was the operator of the dump truck.
"The Defendant was "operating" the truck
 As stated previously, the plaintiff's action is not barred if it is based on the defendant's operation of a motor vehicle. Section 31-293a of the Connecticut General Statutes. Operation is not defined in Section 31-293a or in title 14 of the Connecticut General Statutes. In Davey v. Pepperidge Farms, Inc., 180 Conn. 469 (1980), the Court stated: While it is true that operation is not defined in General Statutes section 14-1, the cases clearly indicate that operation as it refers to a motor vehicle relates to the driving or movement of the vehicle itself or a circumstance resulting from the movement of the vehicle. See Plunkett v. Nationwide Mutual Ins. Co., 150 Conn. 203, 209, 187 A.2d 754 (1963); Reetz v. Mansfield, 119 Conn. 563, 178 A. 53 (1935) Stroud v. Water Commissioners, 90 Conn. 412 97 A. 336 (1916). Id., 472 n. 1.
 The Davey rule confining operation within the context of Section 31-293a to the driving or movement of the vehicle itself or a circumstance resulting from the movement of the vehicle was followed in Dias v. Adams, 189 Conn. 354, 358
(1983); Kegel v. McNeely, 2 Conn. App. 174, 178 (1984) Kiriaka v. Alterwitz, 7 Conn. App. 575, 579 (1986); Conti v. Rose Poultry Co., 3 Conn. App. 246, 248 (1985), cert. denied 195 Conn. 802 (1985); and Cirillo v. Sardo, Conn. App. 664, 670 (1996), cert. denied, 239 Conn. 904 (1996)
The facts of this case clearly fall within the Davey rule operation as it refers to a motor vehicle relates to the driving or movement of the vehicle itself or a circumstance CT Page 4009 resulting from the movement of the vehicle. The defendant was engaged in operation of the truck because he caused the movement of the truck itself when he towed it. (Exhibit 1, defendants deposition, pp. 110, 111, 130-31.) The defendant was engaged in the operation of the truck because the plaintiff's injury occurred due to a circumstance resulting from the movement of the truck. The plaintiff's injury happened when the hook broke free during the towing operation and struck him in the head. This circumstance resulted from the movement of the truck by the defendant during the towing operation. (Exhibit 1, defendant's deposition, pp. 130-131.) The truck itself was moving at the time of the accident. (Exhibit 1, defendant's deposition, p. 111.) There is no question that the hook flew off the bucket of the payloader, went through the windshield of the truck, and struck the plaintiff in the head because the defendant was pulling the dump truck forward. (Exhibit 1, defendant's deposition pp. 130-131.) The accident was caused by the movement of the truck by the defendant. (Exhibit 1, defendant's deposition, pp. 130-131.) [Internal quotation marks omitted.]
 Supplemental Memorandum in Opposition To Motion For Summary Judgment, December 6, 1999, pp. 9-11. [133]
To reach this conclusion, plaintiff relies totally on the following sentence in a footnote in Davey v. Pepperidge Farm,Inc., 180 Conn. 469 (1980)
 "While it is true that `operation' is not defined in General Statutes 14-1, the cases clearly indicate that operation as it refers to a motor vehicle relates to the driving or movement of the vehicle itself or a circumstance resulting from the movement of the vehicle." Id., 472, n. 1.
The meaning of the quoted sentence is informed by the context of the facts of Davey, in which Davey (plaintiff) was injured when struck by a hoist mounted on a truck. He sued his fellow employee who he claimed was operating the hoist negligently. The truck upon which the hoist was mounted was a motor vehicle In order to run the hoist, the truck's engine had to be running. The truck itself was not moving at the time of the accident.
The Supreme Court held that the defendant was not engaged in CT Page 4010 the operation of a motor vehicle. It is in this context that the Supreme Court said "that operation as it refers to a motor vehicle relates to the driving or movement of the vehicle itself or a circumstance resulting from the movement of the vehicle." Davey's accident was caused by or related to the movement of the hoist. It was not caused by or related to the truck's movement. The defendant co-employee was not engaged "in the operation of a motor vehicle" when Davey was injured.
As authority for the statement, the Supreme Court cited three cases: Plunkett v. Nationwide Mutual Ins. Co.,150 Conn. 203, (1963); Reetz v. Mansfield, 119 Conn. 563 (1935); andStroud v. Water Commissioners, 90 Conn. 412 (1916). The court reviews each of these cases for such light as they cast on the Davey statement.
Plunkett v. Nationwide Mutual Ins. Co., 150 Conn. 203
(1963), involved the use of a parking lot patron's automobile by another parking lot patron who did so at direction of parking lot attendant. There was a claim that the patron who operated car was the alter ego of the attendant. This claim was rejected. This court finds nothing in Plunkett which promotes plaintiff's position. And, the [Plunkett] court observed: "Cases which have applied the alter ego theory in automobile negligence situations seem to have one common factor: The person to whom the negligence was imputed, because of his right to exercise control over the driver, was always in the car with the driver and usually at his side. Id., 209. In the case at bar, plaintiff was clearly the driver. Defendant was not even in the truck. Except for pulling the truck, defendant was not in control of the truck. The plaintiff was.
In Reetz v. Mansfield, 119 Conn. 563 (1935), the defendant was in his moving car sitting next to a young lady who was behind the steering wheel. There was evidence he had his hands on the steering wheel just before his car collided with a car in which the plaintiff was riding. After a bench trial, the court held: "The defendant was holding the steering-wheel of his car at the time and was controlling its course.'" On appeal, the Supreme Court sustain[ed] the conclusion of fact reached by the trial court, that the defendant was the operator of his car . . . Id., 569. There is little in Reetz helpful to plaintiff, it seems to cut against plaintiff; the conclusion of operation was based on defendant's "holding the steering wheel . . . and was controlling its course" rather than the movement alone of the CT Page 4011 car.
In Stroud v. Water Commissioners, 90 Conn. 412 (1916), plaintiff's motor-car was struck and damaged by defendants' truck. Plaintiff's car was parked on Street. Plaintiff had his car falsely registered in another person's name. The trial court entered judgment for defendant based on a statute which barred recovery "by the owner or operator . . . of a motor vehicle which has not been legally registered . . . for any injury to person or property received by reason of the operation of said motor vehicle in or upon the public highways of the this State. . . . " The Supreme Court rejected plaintiff's claim that the accident occurred while the car was parked and therefore was not in operation. "The word `operation' cannot be limited, as the plaintiff claims it should be, to a state of motion controlled by the mechanism of the car." Id., 414. The Supreme Court also addressed plaintiff's claim that the injury sustained was not "received by reason of operation" because the car was then parked.
 "The remaining question is whether the injury complained of was "received by reason of the operation of said motor vehicle in or upon the public highways of this State." We think it was. The word "operation" cannot be limited, as the plaintiff claims it should be, to a state of motion controlled by the mechanism of the car. It is self-evident that an injury may be received after the operator has brought his car to a stop, and may yet be received by reason of its operation. The word "operation," therefore, must include such stops as motor-vehicles ordinarily make in the course of their operation.
"It is also clear that the words "received by reason of the operation" do not refer merely to injuries proximately caused by such operation. That cannot be so, because the whole purpose of § 19 is to prevent a recovery in cases where the owner, operator, or passenger of the illegally registered car, would otherwise be entitled to one; and no such recovery could in any event be had if the operation of the illegally registered car was in a legal sense the proximate cause of the injury. In order to give any reasonable effect to § 19, it must be understood as requiring the owner, operator, or passenger of a CT Page 4012 motor-vehicle not registered in accordance with §§ 2 or 3 of the Act, to assume all the ordinary perils of operating it on the highway.
 "In this case the plaintiff's car was as much in the ordinary course of operation on the highway at the time of the injury as if it had been used for shopping, calling, or delivering merchandise. One so using the highway necessarily incurs the risk of injury from the negligence of fellow travelers as well while his vehicle is at rest as while it is in motion, and the injury complained of in this case was received "by reason of" the operation of the plaintiff's illegally registered car on the highway, within the plain intent of the Act." Stroud Water Commissioner, 90 Conn. 412, 414-415 (1916)
The court held there was operation even though there was no movement at the pertinent time.
The court finds little, if anything, in Plunkett, Reetz or Stroud, individually or collectively, which strengthens plaintiff's claim.
There have been several cases decided on the basis of Davey which plaintiff has cited. The court reviewed each of them.
Kegel v. McNeely, 2 Conn. App. 174 (1984), involved a truck mounted crane and fellow employees. The truck had an engine and set of controls. The truck was a motor vehicle. The defendant was the driver of the truck. Another employee operated the crane mounted on the truck. The crane had its own engine and controls. Plaintiff, a co-employee was injured when the crane struck overhead high-tension wires. Plaintiff was electrocuted while holding a part of the metal sling which was attached to the. At the time of the accident, the truck was stationary and its ignition turned off. The defendant was seated in the truck's cab with his foot on the brake. The Appellate Court, citing Davey,
stated:
"If a coemployee is not engaged at the time of the fellow employee's injury in any activity related to driving or moving a vehicle or related to a circumstance resulting from movement of a vehicle, the law suit does not fall within the exception of General CT Page 4013 Statutes 31-293a." Kegel v. McNeely 2 Conn. App. 174, 178 (1984).
Plaintiff gains little encouragement from this case.
In Conti v. Rose Poultry Co., 3 Conn. App. 246 (1985), certification denied, 195 Conn. 802 (1985), plaintiff was injured in an accident while he was driving his employer's truck. Relying on the operation of a motor vehicle exception of C.G.S. §31-293a, he sued two other employees, the employer's general manager and a mechanic, claiming their negligence in providing him with a truck with faulty brakes caused his injuries. The trial court granted summary judgment for the defendant coemployees. The Supreme Court upheld the trial court. "The defendants were not engaged at the time of the accident in any activity related to driving or moving the truck." Id., 248. The dismissal of the action against the coemployees was upheld.
Kiriaka V. Alterwitz, 7 Conn. App. 575 (1986) was an action between fellow employees. Defendant Lipscomb was the driver of a furniture truck and plaintiff was his helper. "In the course of their employment . . . Lipscomb was operating their employer's furniture van . . . with plaintiff as a passenger, when he stopped on the highway and parked the vehicle with its lights and flashers on. After Lipscomb parked the truck, he remained in the cab and reviewed papers. In the meantime [plaintiff] alighted and proceeded to cross the highway . . . when he was struck by a motor vehicle. . . . " Conn. App. 576. Lipscomb moved for summary judgment relying on the exclusivity bar of, C.G.S. § 31-293a. Plaintiff objected claiming there was a question of law: "Whether a motor vehicle parked on the side of the road was in operation?" The trial court granted summary judgment "finding that the action did not fall within the exception to § 31-293a because `the defendant Lipscomb was not engaged in any activity related to driving or moving the van or related to circumstances resulting from the movement of the van.'" Id., 577-78. The Appellate Court upheld the summary judgment. In so doing, it discussed the "[t]he Davey rule confining `operation.'" Id., 578. The Appellate court then stated; "`Operation' of a motor vehicle connotes the control and direction of it, the activity of an `operator' or `driver' licensed for that purpose." Kiriaka v. Alterwitz,7 Conn. App. 575, 580 (1986)
In Cirillo v. Sardo, 41 Conn. App. 664 (1996), certification CT Page 4014 denied, 239 Conn. 904 (1996), the plaintiff also relied upon the "negligent operation of a motor vehicle by a fellow employee" exception. The trial court granted summary judgment. Plaintiff's decedent and the defendant Sardo were both employees of a contractor working on Route 8. Both were assigned to put up signs closing a part of the left hand lane. Sardo drove the decedent to the work site in a pickup truck. Sardo parked the pickup truck on the median divider; the engine was running and its transmission was in park. The pickup truck's overhead strobe light and its rear hazard lights were operating. Sardo remained in the pickup truck; decedent was standing in the highway setting up a traffic direction sign. A vehicle swerved into the closed left lane hitting the decedent. That vehicle then hit the pickup truck. When the decedent was struck, the pickup truck had been parked for two minutes. The Appellate Court held:
 "Our decision in Kiriaka is controlling here. In Kiriaka, we stated: "`Operation' of a motor vehicle connotes the control and direction of it, the activity of an `operator' or `driver' licensed for that purpose. The exception to § 31-293a relates to injury causally connected to the control and direction of the employer's vehicle. In the undisputed facts before the trial court, the accidental injuries to [the plaintiff] were unconnected and unrelated to [the defendant's] control, direction and movement of [the employer's] van. His injuries admittedly arose out of and in the course of his employment in the circumstances of the case, but they cannot be extended to reach the exception to § 31-293a. His workers' compensation benefits are the exclusive remedy available to him under that provision of the act." Kiriaka v. Alterwitz, supra, 7 Conn. App. 579-80.
"While it is true that "operation" is not defined in General Statutes § 14-1, the cases clearly indicate that operation as it refers to a motor vehicle relates to the driving or movement of the vehicle itself or a circumstance resulting from the movement of the vehicle. See Plunkett V. Nationwide Mutual Ins. Co., 150 Conn. 203, 209, 187 A.2d 754 (1963); Reetz v. Mansfield, 119 Conn. 563, 178 A. 53 (1935); Stroud v. Water Commissioners, 90 Conn. 412, 97 A. 336 (1916) Davey V. Pepperidge Farms, Inc., 180 Conn. 469, 472
n. 1, 429 A.2d 943 (1980). The construction of the term CT Page 4015 `operation of a motor vehicle' in General Statutes § 31-293a as not including activities unrelated to the movement of the vehicle comports with the policy of the legislature. Dias v. Adams, 189 Conn. 354, 360, 456 A.2d 309 (1983)
 "We have recently stated that `[i]f a coemployee is not engaged at the time of the fellow employee's injury in any activity related to driving or moving a vehicle or related to a circumstance resulting from the movement of a vehicle, the lawsuit does not fall within the exception of General Statutes § 31-293a.' Kegel v. McNeely, 2 Conn. App. 174, 178, 476 A.2d 641 (1984)." Conti v. Rose Hill Poultry Co., 3 Conn. App. 246, 248, 486 A.2d 1145, cert. denied, 195 Conn. 802, (1985) Cirillo v. Sardo, 41 Conn. App. 664, 669-670 (1996), certification denied, 239 Conn. 904 (1996)
The judgment for the defendants was sustained
In a case with facts similar to Davey, the result was the same. In Dias v. Adams, 189 Conn. 354 (1983), coemployees were working laying pipe. Defendant operated a backhoe. The backhoe moved on two continuous tracks. The backhoe had a diesel engine which powered its movement from place to place and also the boom to which there was an attached excavating shovel. The controls for moving the unit from place to place and the controls for operating the boom and shovel were in the same cab. The unit could not be moved from place to place while the boom-shovel was operative. Nor could the boom shovel be operated when the unit was in place to place movement mode. The plaintiff was in a ditch placing pipe placing chain on a steel box which was to be removed by the boom shovel from the ditch. While in the mode for using the boom shovel, suddenly, the boom dropped hitting plaintiff and eventually causing his death. The jury returned a verdict for the plaintiff. The trial court denied defendant's motion for judgment notwithstanding the verdict based on the grounds that the "negligence in the operation of a motor vehicle" exception to § 31-293a. The Supreme Court reversed:
"In the case before us it is clear that, when the mishap took place, the defendant was doing nothing related to driving or moving the vehicle itself, which had been immobilized by switching the power from the treads to the boom. He was CT Page 4016 engaged only in operating the shovel. His negligence, which the jury found to have caused the accident, did not occur, therefore the operation of a motor vehicle, as 31-293a requires for the exception allowing such a suit against a fellow employee." Dias v. Adams, 189 Conn. 354, 358 (1983)
The Supreme Court ordered judgment for the defendant.
In each of the cases discussed, it was held the defendant employee was not "operating a motor vehicle." In each case, the motor vehicle was not being moved at the time. None of these cases enhance plaintiff's position.
The court sets forth again the statement from Davey that plaintiff relies upon.
 "While it is true that `operation' is not defined in General Statutes 14-1, the cases clearly indicate that operation as it refers to a motor vehicle relates to the driving or movement of the vehicle itself or a circumstance resulting from the movement of the vehicle." Davey v Pepperidge Farm, Inc., 180 Conn. 469, 472, n. 1 (1980)
It is clear from the cases that this statement -means — there can be no operation of a motor vehicle unless there is movement of the vehicle. However, this statement does not support the converse: movement of a motor vehicle is operation thereof. The verb in the oft-quoted statement is "relates." Movement is not equated with operation.
Common sense requires that movement is not the equivalent of "operation. If it were, every rear-end collision of motor vehicles would result in the rear vehicle's operator being the operator of the rear-ended (front) vehicle. Numerous other examples readily come to mind. It is a stretch to have one person operating two vehicles at once.
In the very same footnote of Davey, the Supreme Court also stated:
"There is nothing to suggest that the use of any mechanical or electrical device not an integral part of CT Page 4017 the motor vehicle being driven can be considered operation of a motor vehicle."
Surely, the use the front end loader, which was not an integral part, or even any part, of the dump truck cannot be considered operation of the dump truck.
In Kiriaki v. Alterwitz, the Appellate Court observed:
 "`Operation' of a motor vehicle connotes the control and direction of it, the activity of an operator' or `driver' licensed for that purpose. The exception to 31-293a relates to injury causally connected to the control and direction of the employer's vehicle." Kiriaka v. Alterwitz, 7 Conn. App. 575, 580 (1986)
In Kiriaka, plaintiff's injuries were causally connected to the movement of the truck. But defendant was not acting in the capacity of an "operator" or "driver" licensed for that purpose, i.e., to drive or operate the truck. Defendant was not engaged in the operation of the dump truck when plaintiff was injured.
John Burlingham was not acting as an "operator" of the dump truck "licensed for that purpose" when plaintiff was injured.
In Nichols v. Watson, 119 Conn. 637 (1935), a truck was standing on a highway at night was without lights. A statute required a vehicle operated on the highways at night to display running lights and when left standing on the highway also to display lights. The record did not show how long the truck had been standing. The Supreme Court held the truck "was being operated in violation of the statute."
It is clear that movement is not the equivalent of "operation" or even a requisite. See also, Stroud v. WaterCommissioners, 90 Conn. 412 (1916).
Plaintiff's claim that defendant was operating the truck because the truck actually had moved — all of three feet — when the chain broke suggests an oddity. Would it follow that the defendant was not operating the truck if the chain broke — before the truck moved at all, that is, when the strain on the chain was at its greatest due to inertia, Surely, the Workers' Compensation Act is not be so fickle. CT Page 4018
The discussion above has focused on the movement of the motor vehicle(s). The Davey rule also says "operation relates to . . . a circumstance resulting from the movement of the vehicle." Davey v. Pepperidge Farm, Inc., 180 Conn. 469,472, n. 1 (1980). While the mishap here may be characterized as "resulting from the movement of the vehicle (truck)," the court does not believe this establishes "operation" within the meaning of § 31-293a.
Some aid in finding the meaning of "operation" as used in C.G.S. § 31-93a may be gained from the courts' interpretation of "operation" in the context of the drunken driving statute. C.G.S. § 14-227a. The relevant part reads:
 "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the [aforementioned] offense if he operates a motor vehicle on a public highway or in any parking area for ten or more cars . . . (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one percent or more of alcohol, by weight."
"Nothing else in the statute clarifies the meaning of operate." In fact, the use of the term throughout the other sections of Chapter 248, General Statutes 14-212 through 14-296b
inclusive, is ambiguous, and makes no clear distinction between `driving' and `operating' a motor vehicle." State V. Ducatt,22 Conn. App. 88, 90 (1990); certification denied, 217 Conn. 804
(1990)
The Ducatt court recognized there was a Supreme Court sanctioned distinction between "driving" and "operating." The Supreme Court recognized the distinction when it upheld as a correct statement of the law the charge which had been given inState v. Swift, 125 Conn. 399 (1939). In Swift, there was evidence defendant's car had been driven into a bank. When the police arrived, defendant was in the driver's seat of the car "attempting to start the engine. Another person was attempting to push the car. There was evidence that the car inoperable, one front wheel was broken and the engine could not be started. The charge properly left to the jury "whether the car or its engine could be operated." Id., 402. The pertinent part of the charge stated: CT Page 4019
 [T]he statute [in question] refers to persons who shall operate a motor vehicle, and is not confined to persons who shall drive a motor vehicle. A person operates a motor vehicle within the meaning of this statute, when in the vehicle he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle. So if you find that the accused, while under the influence of intoxicating liquor, got into the automobile, while it was standing [at the] side of the street, and manipulated the machinery of the motor for the purpose of putting the automobile into motion, the accused being in the car and in a position to control its movements, the accused would be guilty of operating a car under the influence of intoxicating liquor, whether the automobile moved or not." State v. Swift, 125 Conn. 399, 402-403 (1939).
Building on State v. Swift, the Appellate Court held:
 "An accused operates a motor vehicle within the meaning of General Statutes 14-227a (a) when, while under the influence of alcohol or any drug and while in the vehicle and in a position to control its movements, he manipulates, for any purpose, the machinery of the motor — or any other machinery manipulable from the driver's position that affects or could affect the vehicle's movement, whether the accused moves the vehicle or not. See State v. Swift, supra. The trial court correctly refused to instruct the jury that it had to find that the defendant had intended to move the vehicle." [Italics added.] State v. Ducatt, 22 Conn. App. 88, 93 (1990); certification denied, 217 Conn. 804
(1990)
Ducatt holds that movement, or even the intent to move, are not requisites for operation. Rather, the ability to manipulate the vehicle's controls is the key to operation.
Defendant Ducatt had cited Davey v. Pepperidge Farm, Inc.,180 Conn. 469 (1980). Ducatt stated the significance of Davey:
"The defendant cites Davey v. Pepperidge Farms, Inc., 180 Conn. 469, 472 n. 1, 429 A.2d 943 (1980), for the CT Page 4020 proposition that `operation as it refers to a motor vehicle relates to the driving or movement of the vehicle itself or a circumstance resulting from the movement of the vehicle.' That case is inapposite; the issue in Davey was whether the negligent manipulation of a winch on the back of a truck, the controls for which were also at the back of the truck, constituted operation' of the vehicle within the meaning of General Statutes 31-293a, a section of the Workers' Compensation Act. More important, the discussion of operation in Davey does not conflict with that in State v. Swift, 125 Conn. 399, 6 A.2d 359 (1939), and does not support the defendant's contention. The Davey court was concerned not with equating operating with driving, but with limiting the definition of operation to the use of those mechanical or electrical devices that are `integral part[s] of the motor vehicle.' Davey v. Pepperidge Farms, Inc., supra." State v. Ducatt, 22 Conn. App. 88, 91, n. 2 (1990)
Thus, contrary to-plaintiff's arguments, Davey's definition of "operation" is limited "to the use of those mechanical or electrical devices which are an integral parts[s] of the motor vehicle." Id.
Under this definition, defendant, who was operating the front end loader, and obviously not in a position to even touch the controls of the truck, was not operating the truck.
This definition, given in the context of the drunken driving statute, C.G.S. § 14-227a, is consistent with the definition recognized as applicable to § 31-29a.
 "`Operation' of a motor vehicle connotes the control and direction of it, the activity of an `operator' or `driver' licensed for that purpose." Kiriaka v. Alterwitz, 7 Conn. App. 575, 580 (1986)
Statutory definitions also connote a degree of control beyond mere movement:
"Drive" means to drive, operate or be in physical control of a motor vehicle, including a motor vehicle being towed by another." C.G.S. § 14-1 (19). CT Page 4021
 "Operator" means any person who operates a motor vehicle or who steers or directs the course of a motor vehicle being towed by another motor vehicle and includes a driver as defined in subdivision (20) of this section." C.G.S. § 14-1 (54).
Common sense dictates the conclusion that defendant was not operating the dump truck. Plaintiff was alone in the driver's seat. Plaintiff alone had access to the vital controls, steering wheel, ignition, clutch brakes, etc. Plaintiff alone could have prevented movement by applying the brakes. Plaintiff alone controlled the ignition; if he did not put it in the "on" position, the engine could not turn over. Plaintiff alone controlled the clutch which would engage the gears when plaintiff thought the truck was going fast enough for the engine to turn over. When the engine started, plaintiff was in the driver's seat, he alone was able to steer the truck, control its speed and movement, and stop the truck. Defendant was some feet or yards away from the truck's controls. Defendant was operating another vehicle. Applying common sense, the truck did not have two operators; only one, the plaintiff. Nor was defendant operating two vehicles simultaneously; only one, the front end loader.
In Dias v Adams, the Supreme Court discussed the policy reasons underlying the negligent operation of a motor vehicle exception to the statute barring suits against fellow employees.
"Although the legislative history of 31-293a is not especially revealing, there is some evidence that the intention was to distinguish simple negligence on the job from negligence in the operation of a motor vehicle. Unlike the special' hazards of the work place, the risk of a motor vehicle accident is a common danger to which the general public is exposed. Particular occupations may subject some employees to a greater degree of exposure to that risk. The nature of the risk remains unchanged, however, and in many employments it is no greater than for the general public. The legislature has chosen, therefore, not to extend the immunity given to fellow employees by 31-293a to accidents having a less distinct relationship to the hazards of the employment. At the same time it has accorded the injured employee, in addition to workers' compensation, the same remedy he would have against a member of the general public who caused a motor vehicle CT Page 4022 accident. Our decision to construe the term `"operation of a motor vehicle' in 31-293a as not including activities unrelated-to movement of the vehicle comports with this policy of the legislature." [Footnote omitted.] Dias v. Adams, 189 Conn. 354, 359-360
(1983)
In this case, plaintiff is asking for more than "the same remedy he would have against a member of the general public who caused a motor vehicle accident." Defendant is not in the same position as a member of the general public negligently "caus[ing] a motor vehicle accident." Defendant was operating the front end loader. It was not being operated on a public road, but rather on an off-road construction site. The plaintiff was driving the dump truck at the off road construction site.
In another case where there was a suit against a fellow employee, the court discussed the policy reasons for the "negligent operation of a motor vehicle" exception to the bar of the Workers' Compensation Act. In that case, plaintiff's decedent was killed when he was crushed by the wheels of a large front end loader. Decedent was in a trench which crossed a highway. The trench was being backfilled with earth material. The weight of the front end loader was being used to compact the fill. The tires of the loader were run over the fill material in the trench. Decedent was killed "when the machine [front end loader] operated by the defendant rolled into the portion of the trench where Ferreira [decedent] was working, striking him." Plaintiff received the benefits of the Workers' Compensation Act.Ferreira v. Pisatura, 41 Conn. Sup. 326, 327 (1989)
After quoting the part of Dias v. Adams set forth above, the court stated:
"The plaintiff's decedent, on the day in question, where he was working, subjected himself to the `special hazards of the workplace.' The risk of injury he faced was not that risk of a motor vehicle accident faced by the general public as a "common danger." Clearly, the accident here had a `distinct relationship to the hazards of the employment.' Id., 359-60. The general public is not exposed to the risk entailed by working in an open trench in close proximity to a piece of heavy construction equipment compacting earth in a portion of that trench. The plaintiff's decedent was CT Page 4023 not facing the hazards encountered by the general public as motorists or even pedestrians walking on or alongside a highway open to the public.
 "Thus arguments framed in terms of general policy considerations really favor the defendant's position and lead the court to conclude that under the statutory scheme the Clark Michigan 55 B involved in this accident was not a motor vehicle' as defined in § 31-293a. Holding otherwise would have nothing to do with upholding the interest in motor vehicle safety or the appropriate use of the highways as those terms are even commonly understood." [Footnote omitted.] Ferreira v. Pisatura, 41 Conn. Sup. 326, 351-352
(1989).
In this case, the policy reasons weigh more heavily for this defendant than for the defendant in Ferreira. Plaintiff here "subjected himself to the "special hazards of the workplace," a workplace not on a public highway. "The risk he raced was not that of a motor vehicle accident faced by the general public as a common danger." Clearly, the accident here had a `distinct relationship to the hazards of the employment.'" The general public is not exposed to the risk plaintiff faced when he had defendant pull the truck to jump start it. "Plaintiff here "was not facing the hazards encountered by the general public [using] a highway open to the public." Ferreira v. Pisatura,41 Conn. Sup. 326, 351-352 (1989)
The court concludes that the defendant was not operating a motor vehicle at the time of the accident which injured plaintiff. Accordingly, summary judgment should be granted.
Judgment shall enter for the defendant, James Burlingham, against the plaintiff, Ronald Surprenant.
Parker, J.